```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

          v.                              17 Cr. 165 (PKC)


JUAN THOMPSON,
                                          Plea
                Defendant.
------------------------------x
                                          New York, N.Y.
                                          June 13, 2017
                                          11:55 a.m.


Before:

               HON. P. KEVIN CASTEL,

                                          District Judge

                    APPEARANCES

JOON H. KIM
     Acting United States Attorney for the
     Southern District of New York
JACOB E. WARREN
     Assistant United States Attorney

DAVID E. PATTON
     Federal Defenders of New York, Inc.
     Attorney for the Defendant
JULLIAN HARRIS
MARK GOMBINER
```

1              (Case called)

2              THE COURT:  Before we proceed with the plea
3   proceeding, I have had tendered to me a plea agreement, and the
4   plea agreement is different than any that I have ever seen in
5   that it presents two alternatives as to how the guideline range
6   would work in this case, one based on the defendant's view and
7   the other based on the government's view.  That's somewhat
8   unusual, but what makes it a point of my inquiry before we
9   proceed is the Court is to at some point decide which viewpoint
10  the Court accepts, but today Mr. Thompson will be asked to
11  waive his right to appeal a sentence above the stipulated
12  guideline range which range is not determined as of today's
13  date.

14             So, for example, I turn around, and let's say I accept
15  the government's view of the world and say, hypothetically,
16  that I impose a sentence at the midpoint of the government's
17  range of 37 to 46 months.  Let's say I impose 41 months.  Well,
18  under an appellate waiver, since I've adopted that as the
19  stipulated guideline range and the sentence is within that
20  range, then I could see the government's argument that he's
21  waived his right to appeal or collaterally attack that
22  sentence.  Then again, I can see the defendant's viewpoint.
23  The Court has made a legal ruling as to which guideline range
24  is correct.  Why shouldn't the defendant be allowed to appeal
25  that determination?  I'm not certain as to what the defendant's

1    appellate rights would be under that circumstance, and I don't

2    know how to get the defendant to acknowledge what his rights

3    are, what rights he's giving up, because I don't know what

4    rights he's giving up.

5        Let me hear from the government.

6        MR. WARREN:  Yes, your Honor.  Under the sentencing

7    range on page 3 of the plea agreement -- and this issue was

8    raised in our office, your Honor.  I understand it's rarely

9    done, but it has been done before -- after the Court's

10   determination of the applicability of that sentencing range for

11   the protective order in paragraphs 3 and paragraphs 6 on

12   page 2, whatever the Court's finding is will then be the

13   stipulated guidelines range.  So that would then be the base

14   for the waivers that your Honor just mentioned, for the waiver

15   of appeal and for collateral attack.

16       So I think the parties are comfortable that whatever

17   your Honor's determination is on the applicability of that

18   enhancement, which I think we would address in our sentencing

19   papers to the Court as to why it is applicable or, for the

20   defense, why it's not applicable, your Honor's determination

21   would then become the stipulated guidelines range per the plea

22   agreement.

23       THE COURT:  But I'm taking a waiver today.  I'm not

24   taking a waiver of the right to appeal at some point in the

25   future after this issue has been determined.  Obviously, it

1  hasn't been briefed before me.  I don't have anything here
2  which would enable me to make the determination today.  But the
3  waiver then will, what, retroactively apply to what the
4  defendant allocutes to today?
5         MR. WARREN:  Your Honor, I think the defendant could
6  allocute today that whatever the Court finds, whether that
7  enhancement applies or does not apply, that both parties will
8  be bound by the stipulated guidelines range, whether that's as
9  the government sets out or as the defense sets out.
10         THE COURT:  So, in essence, the defendant is waiving
11  his right to appeal a sentence up to 46 months?
12         MR. WARREN:  Yes, your Honor.
13         MR. GOMBINER:  Judge, that is the defense position as
14  well.  I mean, we think we're going to prevail on this issue
15  before the Court, but if we lose, then the guideline range
16  becomes 37 to 46 months.  We would not be able to appeal any
17  sentence of 46 months or less, and Mr. Thompson understands
18  that.
19         THE COURT:  Is that correct, Mr. Thompson, do you
20  understand that?
21         THE DEFENDANT:  I understand it now, yes.
22         THE COURT:  All right.  Have you discussed this with
23  your lawyers?
24         THE DEFENDANT:  Yes, I have.
25         THE COURT:  All right.  Mr. Thompson, before I can

1  accept a guilty plea from you, I must satisfy myself that you
2  understand the rights that you would have if this case went to
3  trial and the rights that you're giving up by pleading guilty.
4  In a moment I'm going to have the clerk place you under oath.
5  I'm going to ask you certain questions and inform you of
6  certain rights.  If I ask you something or I tell you something
7  and you don't quite understand, please let me know, and I'll
8  put it into different words.  Also, if at any time during this
9  proceeding you wish to speak in private with your lawyers, I'll
10 give you the opportunity to do so.
11          Do you understand all that?
12          THE DEFENDANT:  Yes, I do.
13          THE COURT:  All right.  Please stand and the clerk
14 will administer the oath.
15          (Defendant sworn)
16          THE COURT:  Mr. Thompson, you're now under oath, and
17 your answers to my questions are subject to the penalties of
18 perjury, or of making a false statement, if you do not answer
19 truthfully, and any statement you make today may be used in any
20 such prosecution.  Do you understand all that?
21          THE DEFENDANT:  Yes, I do.
22          THE COURT:  How old are you, sir?
23          THE DEFENDANT:  Thirty-two.
24          THE COURT:  How far did you go in school?
25          THE DEFENDANT:  I went to college.

1          THE COURT:  When you say you went to college, did you
2    receive a degree?
3          THE DEFENDANT:  Yes.
4          THE COURT:  What was your major field of study?
5          THE DEFENDANT:  Political science.
6          THE COURT:  All right.  Are you now or have you
7    recently been under the care of a medical doctor?
8          THE DEFENDANT:  No.
9          THE COURT:  Have you ever been treated for a mental
10   illness?
11         THE DEFENDANT:  No.
12         THE COURT:  Have you ever been addicted to any
13   substance, alcohol, marijuana, cocaine, crack, prescription
14   medications, anything?
15         THE DEFENDANT:  No.
16         THE COURT:  How do you feel today?
17         THE DEFENDANT:  I'm slightly nervous; but, you know, I
18   have to deal with the consequences of my actions.  That's why
19   I'm here before you today.
20         THE COURT:  Is your mind clear?
21         THE DEFENDANT:  My mind is indeed clear.
22         THE COURT:  You understand what's happening?
23         THE DEFENDANT:  I'm fully aware of what's happening.
24         THE COURT:  All right.  Ms. Harris, any doubts as to
25   the defendant's competence to plead?

1          MS. HARRIS:  No, your Honor.
2          THE COURT:  Same question for Mr. Gombiner?
3          MR. GOMBINER:  No, your Honor.
4          THE COURT:  All right.  Based upon Mr. Thompson's
5    responses to my questions and my observations, I find that he
6    is fully competent to enter an informed plea.
7          Now, I've been told that you've signed a waiver of
8    indictment, and I would ask the clerk to place the document in
9    front of Mr. Thompson.
10         Mr. Thompson, have you in fact signed the document
11   that is in front of you?
12         THE DEFENDANT:  Yes, I did.
13         THE COURT:  Do you recognize that as a waiver of
14   indictment?
15         THE DEFENDANT:  I do indeed, yes.
16         THE COURT:  Did you discuss it with your lawyers
17   before you signed it?
18         THE DEFENDANT:  Yes, I did.
19         THE COURT:  Did you understand it before you signed
20   it?
21         THE DEFENDANT:  Yes, I did.
22         THE COURT:  Did you understand that you had the right
23   to have evidence underlying the charges in the superseding
24   information presented to a grand jury of 23 people and to have
25   those people decide by a majority vote whether you should be

1   charged or not, and that by signing the waiver of indictment,
2   you give up that right?  Do you understand all that?
3            THE DEFENDANT:  I recognize that, yes.
4            THE COURT:  OK.  And you understand it?
5            THE DEFENDANT:  I understand it, yes.
6            THE COURT:  All right.  I find that the waiver of
7   indictment is knowing and voluntary, and it is accepted.  The
8   superseding information, S1 17 Cr. 165, is deemed filed in open
9   court.
10           Ms. Harris, can you confirm that the defendant has
11  received, read, and reviewed the two-count superseding
12  information?
13           MS. HARRIS:  Yes, your Honor.
14           THE COURT:  All right.  I'm now going to explain to
15  you, Mr. Thompson, the certain rights that you would have if
16  this case went to trial and the rights you would be giving up
17  by pleading guilty.
18           Under the Constitution and laws of the United States,
19  you are entitled to a speedy and public trial by an impartial
20  jury on the charges contained in the charging document, the
21  superseding information.  Do you understand all that?
22           THE DEFENDANT:  Yes.
23           THE COURT:  If there were a trial, you would not have
24  to prove that you were innocent.  The government would be
25  required to prove by proof beyond a reasonable doubt each

1  element of each crime.  Before you could be found guilty, a
2  jury of 12 people would have to agree unanimously that you were
3  guilty.  Do you understand all of that?
4          THE DEFENDANT:  Yes, I do.
5          THE COURT:  If there were a trial, at every stage of
6  your case, you'd be entitled to be represented by a lawyer, and
7  if you could not afford a lawyer, one would be appointed at
8  public expense.  Do you understand that?
9          THE DEFENDANT:  Yes, I do.
10         THE COURT:  If there were a trial, the witnesses for
11 the government would have to come to court to testify.  You
12 would be able to hear them and see them.  Your lawyer could
13 question them through cross-examination.  Your lawyer could
14 object to evidence offered by the government.  Your lawyer
15 could present evidence and could ask the Court to compel
16 witnesses to appear at trial on your behalf.  Do you understand
17 all that?
18         THE DEFENDANT:  Yes, I do.
19         THE COURT:  If there were a trial, you would have the
20 right to testify if you chose to do so.  You could come up here
21 and take the witness stand.  Also, you would have the right not
22 to testify, and no one would be permitted to draw any inference
23 or suggestion of guilt from the fact that you decided not to
24 testify.  Do you understand that?
25         THE DEFENDANT:  Yes, I do.

1    THE COURT:  If there were a trial and the jury found
2 you guilty, you would have the right to appeal that finding.
3 Do you understand that?
4    THE DEFENDANT:  Yes, I do.
5    THE COURT:  Those are the rights that you would have
6 if you went to trial.  If I accept a plea of guilty from you,
7 there will be no trial.  You will proceed to the sentencing
8 phase in which the Court will determine the punishment to be
9 imposed upon you.  Even now you have the right to change your
10 mind.  You may plead not guilty to these two charges and
11 proceed to trial on these two charges.  Do you wish to plead
12 not guilty and go to trial?
13    THE DEFENDANT:  No, I do not.
14    THE COURT:  All right.  Do you understand that Count
15 One charges you with cyberstalking and carries a maximum term
16 of imprisonment of five years, a maximum term of supervised
17 release of three years, a maximum fine of $250,000, and a $100
18 mandatory special assessment?  The Court must also order that
19 you make restitution.  Do you understand all that?
20    THE DEFENDANT:  Yes, I do.
21    THE COURT:  Count Two charges you with conveying false
22 information and hoaxes in violation of federal law and carries
23 a maximum term of imprisonment of five years, a maximum term of
24 supervised release of three years, a maximum fine of $250,000,
25 and a $100 mandatory special assessment.  Do you understand all

1    of that?

2               THE DEFENDANT:  Yes, I do.

3               THE COURT:  Again, as with Count Two, the Court may

4    require you to make restitution to any person who I find was

5    injured by reason of your conduct.  Do you understand that?

6               THE DEFENDANT:  Yes, I do.

7               THE COURT:  Now, with respect to supervised release,

8    there are terms and conditions attached to it, and if you do

9    not live up to those terms and conditions, you can be returned

10   to prison for the full period of supervised release.  So say,

11   for example, you receive a prison term to be followed by a term

12   of three years' supervised release, and you live up to the

13   terms of supervised release for two years, but then you violate

14   one of the terms and conditions.  You can be returned to prison

15   for a full period of three years.  Do you understand that?

16              THE DEFENDANT:  Yes, I do.

17              THE COURT:  All right.  Now, are you a United States

18   citizen?

19              THE DEFENDANT:  Yes, I am.

20              THE COURT:  Among the consequences of pleading guilty

21   is that you give up valuable civil rights, such as the right to

22   vote, to hold public office, to sit on a jury, to possess a

23   firearm, to hold certain other licenses, and to receive certain

24   government benefits.  Do you understand all that?

25              THE DEFENDANT:  Yes.

1         THE COURT:  Are you serving any other sentence, state
2    or federal, or being prosecuted in any other court for any
3    other crime?
4         THE DEFENDANT:  Not that I know of.
5         THE COURT:  All right.  In sentencing you, I will
6    receive a presentence report prepared by the office of
7    probation that gives me background information and a
8    recommended range of sentence under the sentencing guidelines.
9    After hearing from your lawyers and from the government, I will
10   make my own determination of the correct guidelines range that
11   applies in this case.  Even after determining the correct
12   guideline range, I need not follow it and can sentence you all
13   the way up to the statutory maximum.  The sentencing guidelines
14   are advisory, and they are one of the factors that the Court
15   takes account of in determining the proper sentence under a
16   statute which is commonly referred to as Section 3553(a).  Do
17   you understand all that?
18        THE DEFENDANT:  Yes, I do.
19        THE COURT:  All right.  Now, I understand there's a
20   plea agreement between you and the government, and it's set
21   forth in a six-page letter agreement which bears on the front
22   cover, front page, the date of May 31, letterhead of the
23   Department of Justice.  And I ask the clerk to place it in
24   front of the defendant.
25        Is that your plea agreement?

| | |
|---|---|
| 1 | THE DEFENDANT:  It is indeed, yes. |
| 2 | THE COURT:  Is that your signature on the last page? |
| 3 | THE DEFENDANT:  Yes, it is. |
| 4 | THE COURT:  I notice that it's not dated after your |
| 5 | signature.  Would you kindly date the document following your |
| 6 | signature. |
| 7 | Has anyone threatened you or forced you in any way to |
| 8 | enter into the plea agreement or to plead guilty? |
| 9 | THE DEFENDANT:  No. |
| 10 | THE COURT:  Has anyone given you anything of value or |
| 11 | promised you anything to get you to enter into the plea |
| 12 | agreement or to plead guilty? |
| 13 | THE DEFENDANT:  No. |
| 14 | THE COURT:  Does the plea agreement contain all of |
| 15 | your understandings with the government? |
| 16 | THE DEFENDANT:  Yes. |
| 17 | THE COURT:  I want you to know that any prediction, |
| 18 | calculation, or estimate that anyone has made to you, including |
| 19 | your own lawyers, as to what sentence I may give you is not |
| 20 | binding on me, not binding on the Court; and if it turns out to |
| 21 | be wrong, you will not be permitted to withdraw your guilty |
| 22 | plea.  Do you understand that? |
| 23 | THE DEFENDANT:  I do, yes. |
| 24 | THE COURT:  Now, your plea agreement has a feature in |
| 25 | which you and the government have agreed that you have a |

1    difference of opinion as to the guideline range that may apply
2    in this case.  Your lawyers have urged a stipulated guideline
3    range of 30 to 37 months' imprisonment.  The government is
4    urging a stipulated guideline range of 37 to 46 months'
5    imprisonment.  Under the arrangement that has been made here,
6    each side will have the opportunity to present their view of
7    the stipulated guideline range.  If I accept your lawyer's
8    view, then the stipulated guideline range will be 30 to 37
9    months' imprisonment.  If I accept the government's stipulated
10   guideline range, then the range will be 37 to 46 months'
11   imprisonment, the stipulated guideline range will be.

12            Under this agreement the government has agreed not to
13   appeal a sentence within the stipulated guideline range which
14   the Court adopts or above that range, but you have agreed to
15   waive your right to appeal a sentence within the stipulated
16   guideline range which the Court finds or below that range.  You
17   have waived your right to appeal or collaterally attack a
18   sentence unless it is above the stipulated guideline range, and
19   in that event, the law will only allow you to appeal on the
20   basis that it is unlawful, unreasonable, and/or contrary to
21   law.  Do you realize that?
22            THE DEFENDANT:  Yes.
23            THE COURT:  You understand that?
24            THE DEFENDANT:  Yes.
25            THE COURT:  Have you discussed this provision with

1   your lawyers?

2           THE DEFENDANT:  Yes.

3           THE COURT:  Let me ask the government a question.
4   What happens if the Court concludes the guideline range is
5   different from what either the defense or the government
6   asserts?  I have my own obligation to determine the correct
7   guideline range; correct?

8           MR. WARREN:  Yes, your Honor.

9           THE COURT:  What happens then?

10          MR. WARREN:  Your Honor, if the Court determined the
11  guidelines range was different than here, then I think
12  depending on the sentence, if it was below -- if it was above
13  either guidelines range stipulated here in the plea agreement,
14  I believe the defendant wouldn't be bound by the waivers, your
15  Honor.

16          THE COURT:  So in that case there would not be a
17  waiver?

18          MR. WARREN:  Correct, your Honor.

19          THE COURT:  All right.  Any basis to disagree with
20  that, Mr. Gombiner or Ms. Harris?

21          MS. HARRIS:  No.  Thanks.

22          THE COURT:  All right.  Let me hear from the
23  government.  And you should listen to this, Mr. Thompson.  This
24  is what the government would have to prove at trial by proof
25  beyond a reasonable doubt.

1    What are the elements of the crimes charged in Counts
2    One and Two of the indictment and what, in summary, would be
3    the government's evidence if this case proceeded to trial?
4    MR. WARREN:  Yes, your Honor.  For Count One,
5    cyberstalking, first, that the defendant used an electronic
6    communication service or electronic communication system or any
7    other facility of interstate commerce as charged in the
8    information; second, that the defendant engaged in a course of
9    conduct with intent to kill, injure, harass, intimidate, or
10   cause substantial emotional distress to victim one; third, and
11   finally, that as a result of that course of conduct, victim one
12   experienced substantial emotional distress.
13   For Count Two, 18 U.S.C. Section 1038, the first
14   element is that the defendant engaged in conduct with the
15   intent to convey false or misleading information; second, that
16   the defendant conveyed information under circumstances in which
17   such information may reasonably have been believed; and, third,
18   that such information indicated that an activity has taken, is
19   taking, or will take place that would constitute a violation of
20   Title 18, United States Code, Section 2332a(a), threatened use
21   of a weapon of mass destruction.
22   For the proof of these two crimes, your Honor, the
23   government would offer proof -- testimony from victim one about
24   the false and salacious communications that victim one received
25   from the defendant and that victim one's employer received,

1     testimony from the victim organizations that the threats they
2     received -- about the threats they received in victim one's
3     name and in Thompson's name, documentary evidence including
4     threatening communications, including search warrant returns
5     from the defendant's email accounts and Twitter account, and
6     finally the defendant's post-arrest statements where he
7     admitted to harassing victim one.
8              THE COURT:  All right.  Mr. Thompson, please tell me
9     in your own words what you did that leads you to believe that
10    you are guilty of the crimes charged in Counts One and Two.
11             THE DEFENDANT:  Well, in 2016, I sent emails and faxes
12    to my ex-romantic partner's employer.  These messages contained
13    false and salacious allegations about misconduct on her part.
14    I also sent text messages and emails to her in which I
15    threatened to defame her.  I also sent emails to several local
16    community centers in New York and other states.  In those
17    emails I falsely claimed that my ex-romantic partner had
18    planted a bomb in these centers.  I sent some emails in my name
19    and some in her name.  I believed that these false threats
20    would be taken seriously by the community centers and place
21    them in fear for their safety.  I committed all these acts with
22    the intent to disrupt my ex-romantic partner's life, to cause
23    her substantial distress.  And for this I deeply apologize and
24    plead guilty.
25             THE COURT:  Let me ask you, Mr. Thompson.  You

1   described the person as a romantic partner.  Was this an
2   intimate partner?
3            THE DEFENDANT:  Yes, it was.
4            THE COURT:  All right.  And did you know what you were
5   doing was wrong and unlawful?
6            THE DEFENDANT:  I was aware of my criminal and
7   unlawful behavior, yes.
8            THE COURT:  All right.  Let me ask the government,
9   what's the proffer on venue?
10           MR. WARREN:  Yes, your Honor.  Some of the victim
11  organizations that the defendant sent the hoax threats to,
12  including the threats that were in victim one's name and his
13  own name, are located here in Manhattan.
14           THE COURT:  All right.  Mr. Thompson, is that correct?
15           THE DEFENDANT:  Yes.
16           THE COURT:  All right.  Does the government agree
17  there's a sufficient factual predicate for a plea of guilty to
18  Counts One and Two?
19           MR. WARREN:  Yes, your Honor.
20           THE COURT:  Does defense counsel agree there's a
21  sufficient factual predicate for a plea of guilty to Counts One
22  and Two?
23           MS. HARRIS:  Yes.
24           THE COURT:  Is defense counsel aware of any valid
25  defense that would likely prevail at trial or any other reason

1      why your client should not be permitted to plead guilty?

2                MS. HARRIS:  No, your Honor.

3                THE COURT:  Mr. Thompson, do you have any questions
4      for me?

5                THE DEFENDANT:  No, I do not.

6                THE COURT:  All right.  Mr. Thompson, with regard to
7      Count One of the superseding information, how do you plead,
8      guilty or not guilty?

9                THE DEFENDANT:  I plead guilty.

10               THE COURT:  With regard to Count Two, how do you
11     plead, guilty or not guilty?

12               THE DEFENDANT:  I plead guilty.

13               THE COURT:  All right.  Based upon your responses to
14     my questions and my observations, I find that you know your
15     rights, you know the consequences of pleading guilty, and
16     there's a factual basis for your plea of guilty.  Further, I
17     find that the plea agreement was knowingly and voluntarily
18     entered into, including the provisions waiving the right to
19     appeal or attack a sentence under specified circumstances.

20               I'm going to order a presentence investigation and
21     report and direct that no interview of you take place unless
22     your attorneys are present.  It's important that you be candid,
23     truthful, and honest with the people who prepare the report.
24     Tell them the good things and the not so good things.  The
25     report will be important in my decision on sentencing.  Before

1  the day of sentencing, you will have the opportunity to review
2  that report.  I urge you to do so carefully.  If there are any
3  mistakes, point them out to your lawyers so they can point them
4  out to me.
5           Sentencing in this case is set for September 15, 2017,
6  at 2:00 p.m.  Is there anything further from the government?
7           MR. WARREN:  No.  Thank you, your Honor.
8           THE COURT:  Anything further from the defendant?
9           MS. HARRIS:  No, thank you.
10          THE COURT:  All right.  Thank you all very much.
11          MR. GOMBINER:  Thank you.
12          (Adjourned)