

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 13, 2017

**REQUEST TO BE FILED UNDER SEAL**

**BY EMAIL AND HAND DELIVERY**

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *United States* v. *Juan Thompson*, S1 17 Cr. 165 (PKC)

Dear Judge Castel:

    The defendant, Juan Thompson, is scheduled to be sentenced on December 13, 2017, at 11:00 a.m. for his offenses in this case: namely, stalking and harassing an individual victim, in violation of Title 18, United States Code, Sections 2261A and 2, and making hoax bomb threats to Jewish Community Centers and other organizations across the country, in violation of Title 18, United States Code, Section 1038.  The Government writes in advance of sentencing and in response to the defendant's sentencing submission, dated December 8, 2017.[1]

    For the reasons stated herein, a sentence within the correctly calculated Guidelines range of 37 to 46 months' imprisonment would be a just result on the facts here.  The defendant's criminal conduct is deeply troubling and has had a devastating impact on an individual victim ("Victim-1"), while causing harm to many others too.[2]  The Government respectfully submits that a Guidelines sentence, to be followed by a term of three years' supervised release, with a set of special conditions proposed by the Probation Department, is a fair and appropriate sentence for the defendant.  As discussed below, this sentence is necessary for the following reasons:  (1) to reflect the egregiousness of the offense conduct and to provide just punishment; (2) to protect Victim-1 and the public from future crimes by the defendant; (3) to deter the defendant from continuing to harass, stalk, and make threats towards Victim-1 and others; and (4) to promote respect for the laws that prohibit stalking and making hoax threats, and to deter individuals similarly situated to the defendant from committing such crimes.

---

[1]    Five exhibits, Exhibits A to E, are attached to the Government's sentencing submission.

[2]    Victim-1 submitted a Victim Impact Statement to the Court; Victim-1 also plans to address the Court directly at the defendant's sentencing on December 20.

# BACKGROUND

## I.     The Offense Conduct.

In July 2016, the defendant began a campaign of stalking and harassment of Victim-1, his former girlfriend, that lasted until his arrest in March 2017.  As detailed below, and as evidenced in the Victim Impact Statements, the conduct here is egregious.  The defendant's criminal conduct began in July 2016 with false and defamatory emails to Victim-1's employer ("Company-1").  (PSR ¶ 10).  The defendant's sustained campaign of stalking and harassing Victim-1 only continued from this point, and escalated as months went by.  The defendant continued sending Victim-1 and Company-1 false and harassing emails (from multiple different email addresses), made a false accusation to the National Center for Missing and Exploited Children ("NCMEC") that Victim-1 possessed child pornography, posted false and defamatory claims about Victim-1 on his public Twitter feed, and ultimately made a series of bomb threats to Jewish Community Centers and other organizations (collectively, the "Victim Organizations") in New York and across the United States, in Victim-1's name and in his own name.  (PSR ¶¶ 14-26).

A summary timeline of the defendant's pattern of criminal conduct—which highlights the quantity and quality of his horrific harassment, stalking, and hoax threats—is presented below.

### A.     July 2016:  The Defendant Begins to Stalk and Harass Victim-1.

On July 27, 2016, the day after Victim-1 ended her relationship with the defendant, the defendant sent an email to the Executive Director of Company-1 falsely claiming that Victim-1 had been pulled over for driving while intoxicated and falsely claiming that Victim-1 was being sued over spreading a sexually transmitted disease.  (PSR ¶ 10).  The email sent by the defendant purported to be from the producer for a national news organization, but was in fact sent by the defendant from an email account he had created.  *Id.*  The defendant had also created a fake document – purporting to be a lawsuit filed against Victim-1 – that falsely alleged Victim-1 had spread a sexually transmitted disease; the metadata from the document created by the defendant revealed that the defendant had made an edit to the document on July 7, 2016.  *See* Ex. A.

### B.     August and September 2016: Victim-1 Obtains an Order of Protection Against The Defendant, but the Defendant's Stalking and Harassment Continues.

In August 2016—after Victim-1 discovered that it was the defendant who had created the fake lawsuit—Victim-1 applied for and received an Order of Protection in New York State Court against the defendant, which was renewed in October and December 2016 (collectively, the "Orders of Protection").[3]  (PSR ¶ 12, Ex. B).  In September 2016, the defendant sent the

---

[3]     As discussed further herein, while the Government concedes that the defendant was not formally served with the Orders of Protection, the record indicates that the defendant was aware the Orders of Protection existed.  Under New York law, a defendant can be in violation of a court order if he is on notice that the order exists, even absent formal service.

Executive Director and other senior members of Company-1 several emails that falsely claimed Victim-1 had a sexually transmitted disease, and – in another attempt to get Victim-1 fired from her job – claimed that Victim-1 should not be working for an organization that assists others who suffer from sexually transmitted diseases.  (PSR ¶ 14).  The defendant also sent emails directly to Victim-1 from an anonymous email address that contained nude photographs of Victim-1, and threatened to release the nude photographs of Victim-1 to the public.  (PSR ¶ 15).

> **C.    October and November 2016:  The Defendant Continues to Stalk and Harass Victim-1, and Makes a False Claim that Victim-1 Possessed Child Pornography.**

In October 2016, the defendant continued making false and defamatory claims against Victim-1 to Company-1 in an attempt to get Victim-1 fired from her job.  The defendant sent an email to the human resources manager at Company-1 falsely claiming that Victim-1 had threated to kill the defendant. (PSR ¶ 16).  The defendant also sent faxes to Company-1 that falsely claimed Victim-1 was anti-Semitic—the faxes contained purported screen shots of Victim-1's social media username being used to make these anti-Semitic statements.  *Id.*

On October 15, 2016, the defendant made an anonymous report to the NCMEC that falsely claimed Victim-1 possessed child pornography.  (PSR ¶ 17).  The defendant falsely claimed that Victim-1 had showed him at least two child pornographic images on Victim-1's cellular phone, and then provided Victim-1's contact information to the NCMEC.  *Id.*  On November 22, 2016, a detective with the New York City Police Department (the "NYPD Detective") called the defendant regarding the claim made against Victim-1 to the NCMEC the previous month.  (PSR ¶ 18).  The NYPD Detective confronted the defendant with the fact that the claim made to NCMEC on October 15, 2016 came from an internet protocol address where Thompson resided.  *Id.*  The defendant told the NYPD Detective that "they [the defendant and Victim-1] filed reports against each other for harassment but state[d] he does not engage in communication with her."  *See* Ex. C.  The NYPD Detective then informed the defendant that his conduct must stop, and that he should not attempt to contact Victim-1.  *Id.*

> **D.    January and February 2017:  The Defendant Makes Hoax Bomb Threats in Victim-1's Name and His Own Name and Posts False and Defamatory Statements About Victim-1 on His Publicly Available Twitter Feed.**

The defendant's stalking and harassment of Victim-1 culminated in January and February 2017 with a series of hoax threats in Victim-1's name and his own name.  The hoax threats mainly targeted Jewish Community Centers, schools, and other organizations that provide service to and on behalf of the Jewish Community.  The hoax threats the defendant made are summarized below.

- On January 28, 2017, the defendant sent a bomb threat, in his own name, to a Jewish History Museum located in Manhattan: "Juan Thompson put 2 bombs in the History Museum set to go off Sunday."  Compl. at ¶ 8.a.

- On February 1, 2017, the defendant sent a bomb threat to a Jewish school in Farmington Hills, Michigan: "Juan Thompson [THOMPSON's birthdate] put two bombs in your school last night.  He is eager for Jewish newtown."  Compl. at ¶ 8.b.

- Also on February 1, 2017, the defendant sent two bomb threats to a Jewish school in Manhattan within ten minutes of each other, both emails stated: "Juan Thompson [THOMPSON's birthdate] put two bombs in the middle school last night.  He is eager to a Jewish newtown."  Compl. at ¶ 8.c.

- On February 7, 2017, the defendant sent a bomb threat to a Jewish Community Center in Manhattan: "Juan Thompson [THOMPSON's birthday] put two bombs in the office of the Jewish center today.  He wants to create Jewish newtown tomorrow."  Compl. at ¶ 8.d.

- On February 20, 2017, the defendant sent an email to a Jewish Community Center in San Diego, California, which claimed that Victim-1 hated Jewish people and had placed a bomb inside the Jewish Community Center in San Diego.  (PSR ¶ 20).

- Also on February 20, 2017, the defendant sent an email to a private school in Manhattan, which claimed that Victim-1 was planning to bomb the school the next day, February 21, 2017.

- On February 21, 2017, the defendant sent an email to the Council on American-Islamic Relations which claimed that Victim-1 had placed a bomb inside a Jewish Community Center in Dallas, Texas.  (PSR ¶ 21).

- On February 22, 2017, the defendant called the Anti-Defamation League ("ADL") and stated that there was an explosive in the ADL's New York Office.  (PSR ¶ 21).

- The defendant also sent threats to and made false accusations against Victim-1 the NYPD, the St. Louis Police Department, the Bureaus of Alcohol, Tobacco, and Firearms, and the New York State Office of Professions.   (PSR ¶¶ 29, 31).

Following these hoax threats that the defendant made in Victim-1's name and his own name, the defendant posted false and defamatory statements about Victim-1 to his publicly available Twitter Feed, repeatedly and falsely claiming that Victim-1 was a racist and that Victim-1 was responsible for the recent bomb threats directed towards Jewish Community Centers.  *See* Ex. D.

## II.     The Harms of Stalking and Hoax Threats to Victims and to the Public.

The crime of stalking is a serious offense that has profound consequences for victims and for the public.  It is an offense that is about power and control, disproportionately harms and affects women, and typically occurs within the context of intimate partner or domestic violence.[4]

"Being stalked, and suffering the fear and threats that characterize the crime" is significantly correlated with symptoms of post-traumatic stress disorder ("PTSD") and psychological distress.[5]  Specifically, for victims, stalking typically causes health problems, including higher levels of fear, distress, anxiety, PTSD, depression, and insomnia.[6]  Stalking also causes significant economic harms, including loss of time from work, loss of a job or job opportunities, the inability to take advantage of employment opportunities, reduced productivity or job performance, the need to change residencies, legal fees, and health and mental treatment.[7]  In addition, while stalking is typically a more "psychological" than "physical" offense, an individual who stalks a victim is, unsurprisingly, more likely to harm the victim.[8]

---

[4]    *See, e.g.,* U.S. Department of Justice, Office on Violence Against Women, *2014 Report to Congress* at 2 (January 2017), available at https://www.justice.gov/ovw/page/file/932736/download (last visited December 13, 2017) (hereinafter "DOJ, Report to Congress") (noting that 1 in 7 U.S. women and 1 in 19 U.S. men have experienced stalking in their lifetimes, and the most common relationship between victim and stalking perpetrator is that of current or former intimate partner).

[5]    DOJ, Report to Congress at 4.

[6]    *See* U.S. Department of Justice, Office of Justice Programs, National Institute of Justice, *Intimate Partner Stalking: Fear, Psychological Distress and Health Impacts*, available at https://www.nij.gov/topics/crime/intimate-partner-violence/stalking/Pages/fear-distress-health.aspx (last visited December 13, 2017) (hereinafter "DOJ, Impacts").

[7]    *See* U.S. Department of Justice, Office of Justice Programs, National Institute of Justice, *Intimate Partner Stalking: Economic Harm Caused*, available at https://www.nij.gov/topics/crime/intimate-partner-violence/stalking/Pages/economic-harm.aspx (last visited December 13, 2017) (hereinafter "DOJ, Economic Harm"); DOJ, Report to Congress at 5.

[8]    *See, e.g.*, DOJ, Health Impacts; U.S. Department of Justice, Office of Justice Programs, National Institute of Justice, *Intimate Partner Stalking: Duration and Trajectory*, available at https://www.nij.gov/topics/crime/intimate-partner-violence/stalking/Pages/duration.aspx    (last visited December 13, 2017); U.S. Department of Justice, Office of Justice Programs, National Institute of Justice, *Comparing the Danger Posed by Partner Stalkers Versus Non-Partner Stalkers*, available at https://www.nij.gov/topics/crime/intimate-partner-violence/stalking/Pages/partner-nonpartner.aspx (last visited December 13, 2017); U.S. Department of Justice, Office of Justice Programs, National Institute of Justice, *Comparing Abusive Partners Who Do and Do Not Stalk,* available at https://www.nij.gov/topics/crime/intimate-partner-violence/stalking/Pages/stalkers-nonstalkers.aspx (last visited December 13, 2017); *see also* DOJ, Report to Congress at 4 (describing the "numerous tangible and intangible costs" of stalking).

For the public, stalking produces significant harms.  Researchers estimate that stalking can cost upwards of $342 million in 2003 dollars for lost productivity and mental health care costs—and that this amount is likely a significant underestimate of the costs of stalking.[9]  In addition, it is widely accepted that stalking is connected to other forms of violence against women, including domestic violence, physical and sexual assault, and murder.[10]

Despite the harms caused by stalking to both individual victims and to the public, stalking is an offense that has historically remained underreported and underprosecuted.[11]  Such underreporting is a result of, among other things, inadequate protections for stalking victims, a belief that the police cannot or will not do anything, fear that victims will not be believed, fear of the perpetrator, not having proof of the stalking (particularly in cases of physical stalking), and fearing that the crime will not be taken seriously.[12]

Communicating hoax threats, including hoax bomb threats, is also a serious offense and has a significant impact on the public.  Organizations, like the Victim Organizations take every threat seriously and must act as if the threat can and will be carried out.  The threats made here not only impacted the Victim Organizations, but also the members of the public who relied on the Victim Organizations for services.  When a bomb threat is made to a school, students, parents, and teachers are all harmed.  The emotional impact of having to worry as a student about your own physical safety, in a place where children should always feel safe, is impossible to quantify.  For parents, there is no worse feeling or emotion than the thought of their children being physically harmed.  And the toll on Victim Organizations who receive hoax threats is not just emotional; the harm is quantified in resources dispensed to address the harm, such as bomb sweeps, and additional security measures after receiving a threat.

## III.    The Defendant's Conduct Has Significantly Impacted Victim-1 and Has Harmed Others.

### A.    Harm to Victim-1, Victim-1's Friends and Family Members, and Company-1.

As Victim-1's has already described to the Court through her detailed statement, the defendant's "campaign to defame, harass, stalk and threaten [Victim-1] was methodical and extensive."  *See* Victim-1 Impact Statement at 1.  The defendant's conduct has impacted Victim-1 emotionally, physically, and professionally.  She lived in terror every day.  Through the defendant's actions, Victim-1 herself became the target of police inquiry, suffered through the

---

[9]    *See* DOJ, Economic Harm.

[10]    *See, e.g.*, DOJ, Report to Congress at 3 (noting that of female victims who were physically assaulted by their violent partners in the preceding year, 90 percent were stalked by that partner, and of women murdered by their former or current partners, 54 percent had reported stalking to the police before they were killed).

[11]    DOJ, Report to Congress at 5-6 (noting that the rates of reporting for stalking crimes are anywhere between 17 and 41 percent).

[12]    *See, e.g.*, DOJ, Report to Congress at 5.

humiliation of having the most senior members of her employer be terrorized by the defendant, and likewise witnessed the defendant target and harass her family members and friends on a daily basis.  It is a testament to Victim-1's strength that she was able to endure the relentless stalking and harassment of the defendant.  The extent of the defendant's conduct, and the toll it has taken and continues to take on Victim-1, is laid bare in her statement to the Court.

The defendant's cruel actions also targeted Company-1, Victim-1's friends, and her family members.   The Victim Impact Statement from Company-1 details the "constant harassment, attempted extortion, anti-Semitic attacks, racist rants, and sexually explicit material (via phone, email, and faxes) as well as further impersonations by [the defendant] of federal agents, journalists, news agencies, and even our own staff" endured by Company-1.  *See* Company-1 Impact Statement at 3.  It is a testament to the leadership and employees of Company-1 that Company-1 supported Victim-1 and stood by her through the defendant's horrific conduct.  The defendant's conduct also took a toll on the finances and resources of Company-1.  *Id.*

Victim-1's friends and family members were also targeted by the defendant. Victim-1's mother submitted a statement to the Court that details one of the defendant's vicious threats to Victim-1's mother.

> The fear as a parent that I experienced for my daughter [Victim-1] has no limits, and she and our family were terrorized by Juan Thompson.  The threats were like dodging bullets.  In this case the "bullets" were the most frightening threat a parent could imagine.  While traveling abroad I received a Bull's-eye on a picture of [Victim-1], with her face in its crosshairs, and an email of my home address being posted as a threat to do me harm, and that "I'm next."[13]

Many other family and friends were harmed too.  Victim-1's aunt summarized the level of harm to Victim-1's family and friends:

> Stalking does not affect just the victim.  While [Victim-1] was the target, all of us who love her suffered as a result of [the defendant's] actions; both directly and indirectly.  I have one niece and no nephews.  Just imagine the depths of frustration, to be helpless by not being able to keep someone you love safe.  It is a living nightmare.[14]

---

[13]   *See* Victim Impact Statement of Victim-1's mother at 1.

[14]   *See* Victim Impact Statement of Victim-1's aunt at 1.

"A living nightmare" best characterizes the sum total of enduring the defendant's relentless stalking and harassment. Even Victim-1's "92 year old grandmother called [Victim-1] afraid of her safety and [Victim-1's]."[15]

### B.    Harm to Victim Organizations and the Public.

Not only was Victim-1, her friends, family members, and Company-1 harmed, but thousands of others were too through the defendant's hoax threats. The defendant's conduct culminated in a series of hoax bomb threats in Victim-1's name and his own name. While none of these threats were ever carried out – and there is no indication in the record that the defendant ever took steps to carry out a specific threat – the harmful impact on the Victim Organizations still occurred. In January and February 2017, Jewish Community Centers across the United States, and throughout the world, were victimized by repeated threats of violence. During this time, the defendant targeted Jewish Community Centers and other organizations that serve the Jewish Community because such threats would garner the most attention for his campaign to humiliate and terrorize Victim-1.

The impact on the Victim Organizations was substantial. The Victim Organizations provide invaluable services to the public, and play an important role in the everyday lives of many Americans. As a result of the defendant's hoax bomb threats, thousands of people were harmed. Even one bomb threat to a school causes chaos and emotional harm to students, their parents, teachers, and administrators. The school has to decide whether to close or evacuate; law enforcement must be notified and sweep the school for any explosive devices; parents are left with the gut-wrenching feeling that their kids are not safe; and children, instead of learning, are left in fear.

In summary, in addition to Victim-1, the defendant also inflicted a great deal of harm on the Victim Organizations, which in turn impacted the thousands of people that rely on those organizations in their everyday lives. The defendant also harmed the public in general by continuing and perpetuating the threats towards organizations that serve the Jewish Community in January and February 2017, and thereby contributing to a climate of fear.

## IV.    Procedural History.

On March 1, 2017, the defendant was charged by complaint with cyberstalking, in violation of Title 18, United States Code, Sections 2261A and 2. He was arrested on March 3, 2017 in St. Louis, Missouri. On March 15, 2017, a grand jury in this District returned an Indictment No. 17 Cr. 165 (PKC) charging the defendant with the same offense. On June 13, 2017, the defendant pled guilty to a Superseding Information, pursuant to a plea agreement, charging him with cyberstalking, in violation of Title 18, United States Code, Sections 2261A and 2, and hoax threats, in violation of Title 18, United States Code, Section 1038(a)(1).

---

[15]    *See* Victim-1 Impact Statement at 2.

## V.   The Applicable Guidelines Range.

The parties reached a plea agreement that – after acceptance of responsibility – calculated a Guidelines offense level of either 21 (in the Government's view) or 19 (in the defendant's view).  *See* Plea Agreement at ¶ 10.  The one issue, with respect to the Guidelines offense level, that the parties reserved their right to argue to the Court concerned the defendant's violation of a court protective order.   Section 2A6.2(b)(1) of the Sentencing Guidelines provides:

> If the offense involved one of the following aggravating factors:  (A) the violation of a court protection order; (B) bodily injury; (C) strangling, suffocating, or attempting to strangle or suffocate; (D) possession, or threatened use, of a dangerous weapon; or (E) a pattern of activity involving stalking, threatening, harassing, or assaulting the same victim, increase by 2 levels.  If the offense involved more than one of subdivisions (A), (B), (C), (D), or (E), increase by 4 levels.

U.S.S.G. § 2A6.2(b)(1).

The parties do not dispute that U.S.S.G. § 2A6.2(b)(1)(E) applies to the defendant's conduct.  In addition, the parties do not dispute that Victim-1 had obtained the Orders of Protection in New York State Court against the defendant.  The defendant also does not appear to dispute that he did, in fact, have actual notice of the Orders of Protection.  And the defendant cannot dispute that his conduct in this case did violate the Orders of Protection, which prohibited, among other conduct, "stalking" and "harassing" Victim-1.  *See* Ex. B.  Accordingly, the only issue for the Court to decide is whether an order of protection in New York State Court can be violated when the defendant is not properly served, but is nonetheless on actual notice of the order of protection.  The defendant argues the answer must be no:  "[t]here is no evidence that Mr. Thompson was served with the order of protection or signed it or was in court when it was raised."  Def's Mem at 9.

The defendant is wrong.  Actual notice, and not proper service, is the predicate for violating an order of protection in New York State Court.  *See People v. Jakubowski*, 42 Misc.3d 341, 343 (N.Y. Supp. Ct. 2013) ("In the Family Court context, actual notice of an order of protection, rather than proper service, is a predicate for contempt.").  Here, there is substantial evidence that the defendant was aware of the Order of Protection filed by Victim-1 against him.  An email the defendant sent on September 29, 2016 demonstrates the defendant's knowledge: "It will end here.  Except if you show up in the State of New York.  Whereas a warrant has been issued for your arrest for violation of an order of protection (**aggravated harassment** by electronic means)."  *See* Ex. E (emphasis added).[16]  Not only is this clear evidence of the defendant's knowledge of the Orders of Protection – the Orders of Protection use the term

---

[16]   Exhibit E is an email that the defendant sent – from an email account he created – that purported to be from someone else to the defendant cautioning the defendant to stop harassing Victim-1. This email is another example of the defendant creating a document that purports to show he is the victim. Most importantly, Exhibit E shows that the defendant had actual notice of the Orders of Protection.

"aggravated harassment" – but it also demonstrates that the defendant knew he should not "show up in the State of New York" where there is an order of protection waiting for him. *See* Ex. B. The defendant also informed the NYPD Detective that he was aware that Victim-1 had filed a report against him for harassment. *See* Ex. C. These facts demonstrate by a preponderance of the evidence that the defendant had actual knowledge of the Orders of Protection. *See United States v. Norris*, 281 F.3d 357 (2d Cir. 2002) (factual determinations underlying application of Guidelines enhancements are subject only to proof by preponderance of evidence).

The cases cited by the defendant clearly articulate the proposition that a court order can be violated in New York State Court if the defendant is on actual notice. *See Matter of McCormick v. Axelrod*, 59 N.Y. 2d 574, 583 (1983) ("Moreover, the party to be held in contempt must have had knowledge of the court's order, although it is not necessary that the order actually have been served upon the party.") The defendant's argument with respect to Title 18, U.S.C. § 922(g)(8)(a) misses the mark because even under the standard set forth in Section 922(g)(8)(a), a defendant with actual notice cannot disclaim criminal liability by simply failing to show up to a hearing (or in the defendant's case refusing to travel to the state of New York). *See United States v. Calor*, 172 F.Supp.2d 900, 904-05 (E.D. Ky. 2001). Here, there can be no real dispute that the defendant had actual knowledge of the Orders of Protection, and that his underlying conduct violates the Orders of Protection.

The Government respectfully submits that, pursuant to U.S.S.G. §§ 2A6.2(b)(1)(A) and (E), because the offense involved the violation of a court order, and because the offense involved a pattern of activity involving stalking, threatening, harassing, or assaulting the same victim, the four-level increase is warranted. Accordingly, the defendant's total offense level should be 21 and the applicable Guidelines range is 37 to 46 months' imprisonment.

## VI.    The Probation Department's Recommendation.

The Probation Department has calculated the applicable Guidelines range as 37 to 46 months' imprisonment. (PSR at pgs. 19-20). The Probation Department recommends an incarceratory sentence of 37 months' imprisonment, at the bottom of the applicable Guidelines range, explaining:

> We believe that a term of imprisonment at the low end of the advisory guideline range is warranted in this case in light of the defendant's substance abuse and mental health issues. However, we still believe that a term of imprisonment within the advisory guideline range is an appropriate sentence. *Id*.

The Probation Department also recommends a set of special conditions which the Government supports, including no contact with any Victims in this case, that the defendant be subject to computer and internet monitoring administered by Probation (including unannounced examinations), as well as a search and seizure condition for the defendant's computer and other electronic devices. *Id.*

## VII.        The Defendant's Sentencing Submission.

The defendant requests a sentence of 30 months' imprisonment.  (Def's Mem. at 2).  The defendant's request is based largely on the defendant's traumatic upbringing and substance abuse problems. ████████████████████████████████████████████████████████████████

For the reasons that follow, the Government respectfully submits that an appropriate sentence would be a Guidelines sentence of incarceration, within the correctly calculated range of 37 to 46 months' imprisonment, to be followed by three years' supervised release, as well as the series of special conditions recommended by the Probation Department.  In addition, the Government respectfully requests additional time, under the Mandatory Victims Restitution Act, to submit a proposed restitution order to the Court.[17]

## DISCUSSION

This is an exceptional case.  The defendant's horrific stalking, harassment, and hoax threats are egregious and warrant a serious sentence of incarceration.

The 18 U.S.C. § 3553(a) factors particularly applicable here include:  (1) the need for the sentence to reflect the exceptional nature of the defendant's conduct and to provide just punishment; (2) the need to protect Victim-1 and the public from future crimes of the defendant; (3) the need to deter the defendant from continuing to harass, stalk, and make threats to Victim-1 and others; and (4) promoting respect for the laws prohibiting stalking and making hoax threats and to deter individuals similarly situated to the defendant from committing such crimes.  *See* 18 U.S.C. § 3553(a)(2)(A)-(C).  Each of these considerations weighs heavily in favor of a Guidelines sentence of incarceration.

*First*, a Guidelines sentence of incarceration is warranted to reflect the exceptional nature of the defendant's criminal conduct and to provide just punishment.  The defendant's conduct in this case was exceptional in its frequency, quality, and harm.  Below are some of the characteristics of the defendant's offense conduct that are particularly egregious and warrant a significant term of imprisonment.

- The defendant's criminal conduct involved repeatedly spreading false and defamatory statements about Victim-1's past to her employer, family, and friends.  (PSR at ¶¶ 10-18).

- The defendant made numerous false claims to authorities, including that Victim-1 possessed child pornography, was planning to kill law enforcement officers, and was

---

[17]   Victim-1 has indicated her intent to seek restitution from the defendant, but needs additional time to calculate the monetary harm caused by the defendant.

engaged in narcotics trafficking.  These false claims resulted in Victim-1 being investigated for criminal conduct. (PSR ¶ 29).

- The defendant sought to publicly humiliate Victim-1 through repeated postings on his public Twitter feed that falsely claimed Victim-1 was a racist, and that Victim-1 was in fact responsible for the bomb threats to Jewish Community Centers.  *See* Ex. D.

- The defendant made a series of hoax threats to Jewish Community Centers and other organizations that caused a great deal of harm not only to the Victim Organizations, but also to the thousands of people who depend on those organizations for services in their everyday lives.  (PSR ¶¶ 19-25).

*Second*, a Guidelines sentence of incarceration is necessary to protect Victim-1 and the public from future crimes by the defendant.  For the past nine months—because the defendant has been incarcerated—Victim-1 has received some respite from the daily terror caused by the defendant's criminal conduct.  In a case like this one, where an individual victim has experienced significant trauma and harm (and a defendant's conduct has persisted despite law enforcement contact), a substantial sentence would allow the victim to rebuild her life with some semblance of safety and security, without incessant harassment, and without the fear and terror that she or a member of her family will be humiliated, threatened, or harmed on a daily basis.

*Third*, a Guidelines sentence of incarceration is necessary to deter the defendant from continuing to harass, threaten, and make threats towards Victim-1 and others.  The defendant's crime was not a momentary lapse in judgment.  The defendant's criminal conduct was a calculated, long-term pattern of relentless harassment designed to intimidate, threaten, terrorize, and ruin another person's life.

The defendant was undeterred when the NYPD Detective confronted the defendant with his false allegation that Victim-1 possessed child pornography, and when the NYPD Detective told the defendant to stop contacting Victim-1.  He remained undeterred by subsequent visits from the FBI and the St. Louis Police Department.  In fact, the defendant became increasingly emboldened and escalated the violent nature of his threats, ultimately culminating with a series of bomb threats in Victim-1's name.  The defendant only stopped stalking and making hoax threats when he was arrested by federal law enforcement agents on March 3, 2017.  The defendant's conduct demonstrates a severe and sustained disregard for the law and for the lives of others, and a Guidelines sentence of incarceration is necessary to achieve specific deterrence.

*Fourth*, a Guidelines sentence of incarceration is needed to promote respect for the laws prohibiting stalking and hoax threats, and to deter individuals similarly situated to the defendant from committing such crimes.  The sentence in this case is of particular interest to the public. Stalking is a form of domestic or intimate partner violence that often remains unchecked because, among other things:  victims do not believe that law enforcement will be able to assist them and therefore do not report stalking crimes; orders of protection are often unhelpful and even harmful for victims as victim reporting without adequate consequences for stalkers can incite violence.  Stalking is a serious offense.  It profoundly affects victims' lives,

placing them in constant fear for their safety and security.  Likewise, making hoax threats –
including bomb threats like the defendant made – harm thousands of people because they are
always (as they must be) taken as viable, credible threats that might be carried out.  There is also
a lasting emotional toll these threats take on the great number of people who live through them.
The financial and human resources expended in responding to and deterring hoax threats is also
substantial, and depletes first responders resources that might actually be used to respond to true
emergencies.  A Guidelines sentence of incarceration will send a clear signal that these crimes
are particularly harmful to the public and merit serious prison sentences.

## <u>CONCLUSION</u>

For the foregoing reasons, the defendant's egregious criminal conduct warrants a
Guidelines sentence of imprisonment, to be followed by a three-year term of supervised release,
with a set of special conditions as proposed by the Probation Department.  The Government also
respectfully requests an additional 90 days, under the Mandatory Victims Restitution Act, to
submit a proposed restitution order to the Court.

Respectfully Submitted,

JOON H. KIM
Acting United States Attorney

By: _____
Jacob Warren
Assistant United States Attorney
(212) 637-2264

cc:   Mark Gombiner, Esq. (by email)
      Jullian Harris-Calvin, Esq. (by email)

# Exhibit A

noticeofservice (003).pdf - Adobe Acrobat Pro DC

File   Edit   View   Redax   Window   Help

Home    Tools    Document

Comment

2 Comments

Page 1                                    2

Rectangle

Juan M. Thompson

Underlined Text

7/6/2016 3:50 PM



Sc̲ . P.C.
De̲l 0272731981)
75̲ 00
San Francisco, CA 94105

Kings County Civil Court

)   Case No.
)
)   Civil Action
)
Plaintiff,                     )
)
vs.                            )
)
)
)
Francesca Rossi                )

Defendants

Plaintiff ████████████ ("████████" or plaintiff), by her undersigned

attorneys, says:

**PARTIES**

1. ████████████ is a resident of Oakland, CA and works in finance.

2. ████████████ is property manager in Oakland, CA, and the husband of

████████████

3. Francesca Rossi is a resident of New York, NY.

**NATURE OF THE CASE**

4. Plaintiff was diagnosed with the sexually transmitted disease (STD) of

herpes HSV-2 after having unprotected sex with her then fiancé, and future husband,



7. Co-defendant Rossi never disclosed her HSV-2 condition despite having unprotected sex with co-defendant ████. ████ admitted he had unprotected intercourse with co-defendant, but ████ claims he has evidence he was never made aware of co-defendant's condition.

8. Numerous emails, pictures, texts, and witness affidavits support plaintiff's claim that ████ and Rossi's reckless behavior led to her contracting HSV-2.

9. Rossi's transmission of herpes to ████ and ████ transmission to ████ ████ constitute, under tort law, reckless, negligent, battery, and fraud.

**WHEREFORE,** plaintiff demands judgment against both co-defendants ████ and Rossi as follows:

A. Compensatory damages for damage to reputation and pain and suffering;

B. Damages for mental Anguish

C. Punitive Damages

# Exhibit B

F.C.A §§ 430, 550, 655, 828, 1029                                                          GF5 12/2013

**ORI No:**   NY023023J
**Order No:**   2016-014811
**NYSID No:**   _____

At a term of the Family Court of the State of New York,
held in and for the County of Kings, at 330 Jay Street, Brooklyn, NY
11201, on August 05, 2016

**PRESENT: Honorable Maria Arias**

In the Matter of a FAMILY OFFENSE Proceeding

Francesca Rossi (DOB: 06/07/1984),
            Petitioner

**File #**      246466
**Docket #**   O-19199-16
**Temporary Order of Protection**

- against -

Juan Thompson (DOB: 03/31/1985),
            Respondent

**Ex Parte**

**NOTICE:  YOUR  FAILURE TO OBEY THIS ORDER MAY SUBJECT  YOU TO MANDATORY ARREST AND
CRIMINAL PROSECUTION, WHICH MAY RESULT IN YOUR INCARCERATION FOR UP TO SEVEN YEARS FOR
CRIMINAL  CONTEMPT,  AND/OR  MAY  SUBJECT  YOU  TO  FAMILY  COURT  PROSECUTION  AND
INCARCERATION  FOR UP TO SIX MONTHS FOR CONTEMPT OF COURT. IF YOU FAIL TO APPEAR IN COURT
WHEN YOU ARE REQUIRED TO DO SO, THIS ORDER MAY BE EXTENDED IN YOUR ABSENCE AND THEN
CONTINUES IN EFFECT UNTIL A NEW DATE SET BY THE COURT.**

**THIS ORDER OF PROTECTION WILL REMAIN IN EFFECT EVEN IF THE PROTECTED PARTY HAS, OR
CONSENTS TO HAVE, CONTACT OR COMMUNICATION WITH THE PARTY AGAINST WHOM THE ORDER IS
ISSUED. THIS ORDER OF PROTECTION CAN ONLY BE MODIFIED OR TERMINATED BY THE COURT. THE
PROTECTED PARTY CANNOT BE HELD TO VIOLATE THIS ORDER NOR BE ARRESTED FOR VIOLATING THIS
ORDER .**

A petition under Article 8 of the Family Court Act, having been filed on August 05, 2016 in this Court and good cause having been
shown, and Juan Thompson having been not present in Court.

            **NOW, THEREFORE, IT IS HEREBY ORDERED**  that Juan Thompson (DOB:03/31/1985) observe the following
conditions of behavior:

[01] Stay away from:

[A]  Francesca Rossi (DOB: 06/07/1984);

[B]  the home of Francesca Rossi (DOB: 06/07/1984) at ███████████████████████████████████

[E]  the place of employment of Francesca Rossi (DOB: 06/07/1984);

[14] Refrain from communication or any other contact by mail, telephone, e-mail, voice-mail or other electronic or any other
       means with Francesca Rossi (DOB: 06/07/1984);

[02] Refrain from assault, stalking, harassment, aggravated harassment, menacing, reckless endangerment, strangulation, criminal
       obstruction of breathing or circulation, disorderly conduct, criminal mischief, sexual abuse, sexual misconduct, forcible
       touching, intimidation, threats, identity theft, grand larceny, coercion or any criminal offense against Francesca Rossi (DOB:
       06/07/1984);

GF-5 Page 2
O-19199-16
2016-014811

**It is further ordered** that this temporary order of protection shall remain in force until and including October 13, 2016, but if you fail to appear in court on this date, the order may be extended and continue in effect until a new date set by the Court.

**Dated:**    August 05, 2016                                  ENTER



Honorable Maria Arias

PURSUANT TO SECTION 1113 OF THE FAMILY COURT ACT, AN APPEAL FROM THIS ORDER MUST BE TAKEN WITHIN 30 DAYS OF RECEIPT OF THE ORDER BY APPELLANT IN COURT, 35 DAYS FROM THE DATE OF MAILING OF THE ORDER TO APPELLANT BY THE CLERK OF COURT, OR 30 DAYS AFTER SERVICE BY A PARTY OR THE ATTORNEY FOR THE CHILD UPON THE APPELLANT, WHICHEVER IS EARLIEST.

**The Family Court Act** provides that presentation of a copy of this order of protection to any police officer or peace officer acting pursuant to his or her special duties authorizes, and sometimes requires such officer to arrest a person who is alleged to have violated its terms and to bring him or her before the court to face penalties authorized by law.

**Federal law requires** that this order is effective outside, as well as inside, New York State. It must be honored and enforced by state and tribal courts, including courts of a state, the District of Columbia, a commonwealth, territory or possession of the United States, if the person restrained by the order is an intimate partner of the protected party and has or will be afforded reasonable notice and opportunity to be heard in accordance with state law sufficient to protect due process rights (18 U.S.C §§ 2265, 2266).

**It is a federal crime to:**
· cross state lines to violate this order or to stalk, harass or commit domestic violence against an intimate partner or family member;
· buy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition while this Order remains in effect (Note: there is a limited exception for military or law enforcement officers but only while they are on duty) ; and
· buy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition after a conviction of a domestic violence-related crime involving the use or attempted use of physical force or a deadly weapon against an intimate partner or family member, even after this Order has expired (18 U.S.C. §§ 922(g)(8), 922(g)(9), 2261, 2261A, 2262).

**Check Applicable Box(es):**

[ ]  Party against whom order was issued was advised in Court of issuance and contents of Order

[ ]  Order personally served in Court upon party against whom order was issued

[x]  Service directed by other means: Process Server/Other Peace/Municipal Officer

[ ]  [Modifications or extensions only]: Order mailed on [specify date and to whom mailed]:

[ ]  Warrant issued for party against whom order was issued[specify date]: _____

[ ]  ADDITIONAL SERVICE INFORMATION [specify]: _____

---

In the Matter of a **Family Offense** Proceeding

**Francesca Rossi,**

Petitioner,

- against -

**Juan Thompson,**

Respondent.

| | |
|---|---|
| **File #:** | 246466 |
| **Docket #:** | O-19199-16 |

**SUMMONS**

---

IN THE NAME OF THE PEOPLE OF THE STATE OF NEW YORK:

To:    Juan Thompson
(Address Unknown)

A petition under Article 8 of the Family Court Act having been filed with this Court, and annexed hereto

YOU ARE HEREBY SUMMONED to appear before this court on

| | |
|---|---|
| **Date/Time:** | October 13, 2016 at 9:30 AM |
| **Purpose:** | Return of Process |
| **Part:** | 9 |
| **Floor/Room:** | Floor 9/Room 9013 |
| **Presiding:** | Hon. Maria Arias |
| **Location:** | 330 Jay Street |
| | Brooklyn, NY 11201 |

to answer the petition and to be dealt with in accordance with the Family Court Act.

**On your failure to appear as herein directed, a warrant may be issued for your arrest.**

Dated: August 5, 2016                    Dionne Lowery, Clerk of Court

**NOTICE:** Family Court §154(c) provides that petitions brought pursuant to Article 4, 5, 6, 8 and 10 of the Family Court Act, in which an order of protection is sought or in which a violation of an order of protection is alleged, may be served outside the State of New York upon a Respondent who is not a resident or domiciliary of the State of New York. If no other grounds for obtaining personal jurisdiction over the Respondent exist aside from the application of this provision, the exercise of personal jurisdiction over the respondent is limited to the issue of the request for, or alleged violation of, the order of protection. Where the Respondent has been served with this summons and petition does not appear, the Family Court may proceed to a hearing with respect to issuance or enforcement of the order of protection.

F.C.A.§§ 812, 818, 821                                                    8-2 12/2013

## FAMILY COURT OF THE STATE OF NEW YORK
## COUNTY OF KINGS

In the Matter of a **Family Offense** Proceeding                **File #:**      246466
                                                                **Docket #:**   O-19199-16

**Francesca Rossi,**
                                           Petitioner,                **FAMILY OFFENSE**
        - against -                                                      **PETITION**

**Juan Thompson,**
                                           Respondent.

TO THE FAMILY COURT:

        The undersigned Petitioner respectfully states that:

        I, Francesca Rossi reside at¹ ███████████████████████████████

        The Respondent, Juan Thompson resides at (Address Unknown).

        The Respondent and I are related in the following way: I have an intimate relationship
(former dating - lived together) with the Respondent.

        The Respondent committed the following family offenses against me and/or my children
which constitute attempted assault, assault in the second or third degree, aggravated harassment in
the second degree, harassment in the first or second degree, disorderly conduct, menacing in the
second or third degree, reckless endangerment, stalking, criminal mischief, sexual abuse in the
second or third degree², sexual misconduct, forcible touching, strangulation, criminal obstruction of
breathing or circulation, identity theft in 1st, 2nd, or 3rd degree, grand larceny in 3rd or 4th degree,
coercion in 2nd degree [Penal Law §135.60 (1),(2) or(3))], and other: Threat.

        Describe each incident: starting with the most recent incident: August 4, 2016 at via internet
and phone : resp has been harassing the petr through the internet and phone and is impersonating
people to do so.  Resp has contacted petr's work place to defame her, harassed her friends and is
continuing to do so under different names.  On 07/06/16 the resp sent a fake court paper, through a
fake process server to sue petr for transmitting a STD to an ex-boyfriend in California.  Resp
impersonated a lawyer and made fraudulent court papers. .

        I have filed a criminal complaint concerning these incidents: petr filed a police report .

        I have no children and there are no other children living in my home.

        The Respondent has acted in a way which I consider dangerous or threatening to me, my

---

        ¹If your health or safety or that of your child or children would be put at risk by disclosure of your address or
other identifying information, you may apply to the Court for an address confidentiality order by submitting General
Form GF-21, which is available on-line at www.nycourts.gov .  *See* Family Court Act § 154-b.

        ²Where victim is incapable of consent for reason other than being under age 17 [Penal Law § 130.60(1)].

children, a member of my family or household or person with whom I have or had an intimate relationship, in addition to the incident(s) described in above, as follows: SEE ABOVE.

I have not made any previous application to any court or judge for the relief requested in this petition.

WHEREFORE, Petitioner respectfully requests this Court to:

- adjudge the Respondent to have committed the family offenses alleged;
- enter an order of protection, specifying conditions of behavior to be observed by the Respondent in accordance with Section 842 of the Family Court Act:
  - issue an order having the resp be made to stay away from petr, their person, their property, their home, their job, not to contact petr by phone or beeper, not to contact petr by or through others, not to e-mail, text message or instant message petr and not to assault, menace or harass them;
- enter a finding of aggravated circumstances;
- order such other and further relief as the Court deems just and proper.

**Dated:** August 5, 2016

Fri Aug 2016 08/05/16 13:07:29

**Francesca Rossi, Petitioner**

F.C.A §§ 430, 550, 655, 828, 1029                                                                      GF5 12/2013

ORI No:   NY023023J
Order No:  2016-014811
NYSID No:  _____

                   At a term of the Family Court of the State of New York,
                   held in and for the County of Kings, at 330 Jay Street, Brooklyn, NY
                   11201, on August 05, 2016

**PRESENT: Honorable Maria Arias**

**In the Matter of a FAMILY OFFENSE Proceeding**

**Francesca Rossi (DOB: 06/07/1984),**
          **Petitioner**

      - against -

**Juan Thompson (DOB: 03/31/1985),**
          **Respondent**

**File #**    246466
**Docket #**  O-19199-16
**Temporary Order of Protection**

**Ex Parte**

**NOTICE:  YOUR  FAILURE TO OBEY THIS ORDER MAY SUBJECT  YOU TO MANDATORY ARREST AND CRIMINAL PROSECUTION, WHICH MAY RESULT IN YOUR INCARCERATION FOR UP TO SEVEN YEARS FOR CRIMINAL  CONTEMPT,  AND/OR  MAY  SUBJECT  YOU  TO  FAMILY  COURT  PROSECUTION  AND INCARCERATION  FOR UP TO SIX MONTHS FOR CONTEMPT OF COURT. IF YOU FAIL TO APPEAR IN COURT WHEN YOU ARE REQUIRED TO DO SO, THIS ORDER MAY BE EXTENDED IN YOUR ABSENCE AND THEN CONTINUES IN EFFECT UNTIL A NEW DATE SET BY THE COURT.**

**THIS ORDER OF PROTECTION WILL REMAIN IN EFFECT EVEN IF THE PROTECTED PARTY HAS, OR CONSENTS TO HAVE, CONTACT OR COMMUNICATION WITH THE PARTY AGAINST WHOM THE ORDER IS ISSUED. THIS ORDER OF PROTECTION CAN ONLY BE MODIFIED OR TERMINATED BY THE COURT. THE PROTECTED PARTY CANNOT BE HELD TO VIOLATE THIS ORDER NOR BE ARRESTED FOR VIOLATING THIS ORDER .**

A petition under Article 8 of the Family Court Act, having been filed on August 05, 2016 in this Court and good cause having been shown, and Juan Thompson having been not present in Court.

    **NOW, THEREFORE, IT IS HEREBY ORDERED**  that Juan Thompson (DOB:03/31/1985) observe the following conditions of behavior:

[01] Stay away from:

[A]  Francesca Rossi (DOB: 06/07/1984);

[B]  the home of Francesca Rossi (DOB: 06/07/1984) at ████████████████████

[E]  the place of employment of Francesca Rossi (DOB: 06/07/1984);

[14] Refrain from communication or any other contact by mail, telephone, e-mail, voice-mail or other electronic or any other
     means with Francesca Rossi (DOB: 06/07/1984);

[02] Refrain from assault, stalking, harassment, aggravated harassment, menacing, reckless endangerment, strangulation, criminal
     obstruction of breathing or circulation, disorderly conduct, criminal mischief, sexual abuse, sexual misconduct, forcible
     touching, intimidation, threats, identity theft, grand larceny, coercion or any criminal offense against Francesca Rossi (DOB:
     06/07/1984);

COUNTY OF KINGS

| | | |
|---|---|---|
| In the Matter of a **Family Offense** Proceeding | File #: | 246466 |
| | Docket #: | O-19199-16 |

**Francesca Rossi,**

                               Petitioner,              **SUMMONS**

    - against -

**Juan Thompson,**

                             Respondent.

IN THE NAME OF THE PEOPLE OF THE STATE OF NEW YORK:

      To:  Juan Thompson
           (Address Unknown)

A petition under Article 8 of the Family Court Act having been filed with this Court, and annexed hereto

YOU ARE HEREBY SUMMONED to appear before this court on

| | |
|---|---|
| **Date/Time:** | December 20, 2016 at 9:30 AM |
| **Purpose:** | Return of Process |
| **Part:** | 9 |
| **Floor/Room:** | Floor 9/Room 9013 |
| **Presiding:** | Hon. Maria Arias |
| **Location:** | 330 Jay Street |
| | Brooklyn, NY 11201 |

to answer the petition and to be dealt with in accordance with the Family Court Act.

    **On your failure to appear as herein directed, a warrant may be issued for your arrest.**

**Dated:** October 13, 2016                   Dionne Lowery, Clerk of Court

**NOTICE:** Family Court §154(c) provides that petitions brought pursuant to Article 4, 5, 6, 8 and 10 of the Family Court Act, in which an order of protection is sought or in which a violation of an order of protection is alleged, may be served outside the State of New York upon a Respondent who is not a resident or domiciliary of the State of New York. If no other grounds for obtaining personal jurisdiction over the Respondent exist aside from the application of this provision, the exercise of personal jurisdiction over the respondent is limited to the issue of the request for, or alleged violation of, the order of protection. Where the Respondent has been served with this summons and petition does not appear, the Family Court may proceed to a hearing with respect to issuance or enforcement of the order of protection.

F.C.A.§§ 812, 818, 821                                                                    8-2 12/2013

**FAMILY COURT OF THE STATE OF NEW YORK**
**COUNTY OF KINGS**

In the Matter of a **Family Offense** Proceeding          **File #:**      246466
                                                         **Docket #:**   O-19199-16
**Francesca Rossi,**
                                      Petitioner,              **FAMILY OFFENSE**
       - against -                                                **PETITION**

**Juan Thompson,**
                                      Respondent.

TO THE FAMILY COURT:

          The undersigned Petitioner respectfully states that:

          I, Francesca Rossi reside at[1] ██████████████████████████████

          The Respondent, Juan Thompson resides at (Address Unknown).

          The Respondent and I are related in the following way: I have an intimate relationship
(former dating - lived together) with the Respondent.

          The Respondent committed the following family offenses against me and/or my children
which constitute attempted assault, assault in the second or third degree, aggravated harassment in
the second degree, harassment in the first or second degree, disorderly conduct, menacing in the
second or third degree, reckless endangerment, stalking, criminal mischief, sexual abuse in the
second or third degree[2], sexual misconduct, forcible touching, strangulation, criminal obstruction of
breathing or circulation, identity theft in 1st, 2nd, or 3rd degree, grand larceny in 3rd or 4th degree,
coercion in 2nd degree [Penal Law §135.60 (1),(2) or(3))], and other: Threat.

          Describe each incident: starting with the most recent incident: August 4, 2016 at via internet
and phone : resp has been harassing the petr through the internet and phone and is impersonating
people to do so.  Resp has contacted petr's work place to defame her, harassed her friends and is
continuing to do so under different names.  On 07/06/16 the resp sent a fake court paper, through a
fake process server to sue petr for transmitting a STD to an ex-boyfriend in California.  Resp
impersonated a lawyer and made fraudulent court papers. .

          I have filed a criminal complaint concerning these incidents: petr filed a police report .

          I have no children and there are no other children living in my home.

          The Respondent has acted in a way which I consider dangerous or threatening to me, my

---

          [1]If your health or safety or that of your child or children would be put at risk by disclosure of your address or
other identifying information, you may apply to the Court for an address confidentiality order by submitting General
Form GF-21, which is available on-line at www.nycourts.gov .  *See* Family Court Act § 154-b.

          [2]Where victim is incapable of consent for reason other than being under age 17 [Penal Law § 130.60(1)].

children, a member of my family or household or person with whom I have or had an intimate relationship, in addition to the incident(s) described in above, as follows: SEE ABOVE.

I have not made any previous application to any court or judge for the relief requested in this petition.

WHEREFORE, Petitioner respectfully requests this Court to:

- adjudge the Respondent to have committed the family offenses alleged;
- enter an order of protection, specifying conditions of behavior to be observed by the Respondent in accordance with Section 842 of the Family Court Act:
  - issue an order having the resp be made to stay away from petr, their person, their property, their home, their job, not to contact petr by phone or beeper, not to contact petr by or through others, not to e-mail, text message or instant message petr and not to assault, menace or harass them;
- enter a finding of aggravated circumstances;
- order such other and further relief as the Court deems just and proper.

**Dated:** August 5, 2016

Fri Aug 2016 08/05/16 13:07:29

_____

**Francesca Rossi, Petitioner**

F.C.A §§ 430, 550, 655, 828, 1029                                                    GF5 12/2013

**ORI No:**     NY023023J
**Order No:**   2016-019289
**NYSID No:**   _____

At a term of the Family Court of the State of New York,
held in and for the County of Kings, at 330 Jay Street, Brooklyn, NY
11201, on October 13, 2016

**PRESENT:  Honorable Maria Arias**

**In the Matter of a FAMILY OFFENSE Proceeding**

Francesca Rossi (DOB: 06/07/1984),
                                    Petitioner

- against -

Juan Thompson (DOB: 03/31/1985),
                                    Respondent

File #      246466

Docket #    O-19199-16

**Temporary Order of Protection**

**Ex Parte**

**NOTICE:  YOUR  FAILURE TO OBEY THIS ORDER MAY SUBJECT  YOU TO MANDATORY ARREST AND CRIMINAL PROSECUTION, WHICH MAY RESULT IN YOUR INCARCERATION FOR UP TO SEVEN YEARS FOR CRIMINAL CONTEMPT, AND/OR MAY SUBJECT YOU TO FAMILY COURT PROSECUTION AND INCARCERATION  FOR UP TO SIX MONTHS FOR CONTEMPT OF COURT. IF YOU FAIL TO APPEAR IN COURT WHEN YOU ARE REQUIRED TO DO SO, THIS ORDER MAY BE EXTENDED IN YOUR ABSENCE AND THEN CONTINUES IN EFFECT UNTIL A NEW DATE SET BY THE COURT.**

**THIS ORDER OF PROTECTION WILL REMAIN IN EFFECT EVEN IF THE PROTECTED PARTY HAS, OR CONSENTS TO HAVE, CONTACT OR COMMUNICATION WITH THE PARTY AGAINST WHOM THE ORDER IS ISSUED. THIS ORDER OF PROTECTION CAN ONLY BE MODIFIED OR TERMINATED BY THE COURT. THE PROTECTED PARTY CANNOT BE HELD TO VIOLATE THIS ORDER NOR BE ARRESTED FOR VIOLATING THIS ORDER .**

A petition under Article 8 of the Family Court Act, having been filed on August 05, 2016 in this Court and good cause having been shown, and Juan Thompson having been not present in Court.

        **NOW, THEREFORE, IT IS HEREBY ORDERED**  that Juan Thompson (DOB:03/31/1985) observe the following conditions of behavior:

[01] Stay away from:

[A]  Francesca Rossi (DOB: 06/07/1984);

[B]  the home of Francesca Rossi (DOB: 06/07/1984) at ███████████████████████

[E]  the place of employment of Francesca Rossi (DOB: 06/07/1984);

[14] Refrain from communication or any other contact by mail, telephone, e-mail, voice-mail or other electronic or any other means with Francesca Rossi (DOB: 06/07/1984);

[02] Refrain from assault, stalking, harassment, aggravated harassment, menacing, reckless endangerment, strangulation, criminal obstruction of breathing or circulation, disorderly conduct, criminal mischief, sexual abuse, sexual misconduct, forcible touching, intimidation, threats, identity theft, grand larceny, coercion or any criminal offense against Francesca Rossi (DOB: 06/07/1984);

GF-5 Page 2
O-19199-16
2016-019289

**It is further ordered** that this temporary order of protection shall remain in force until and including December 20, 2016, but if you fail to appear in court on this date, the order may be extended and continue in effect until a new date set by the Court.

**Dated:**   October 13, 2016                                    ENTER



**Honorable Maria Arias**

PURSUANT TO SECTION 1113 OF THE FAMILY COURT ACT, AN APPEAL FROM THIS ORDER MUST BE TAKEN WITHIN 30 DAYS OF RECEIPT OF THE ORDER BY APPELLANT IN COURT, 35 DAYS FROM THE DATE OF MAILING OF THE ORDER TO APPELLANT BY THE CLERK OF COURT, OR 30 DAYS AFTER SERVICE BY A PARTY OR THE ATTORNEY FOR THE CHILD UPON THE APPELLANT, WHICHEVER IS EARLIEST.

**The Family Court Act** provides that presentation of a copy of this order of protection to any police officer or peace officer acting pursuant to his or her special duties authorizes, and sometimes requires such officer to arrest a person who is alleged to have violated its terms and to bring him or her before the court to face penalties authorized by law.

**Federal law requires** that this order is effective outside, as well as inside, New York State. It must be honored and enforced by state and tribal courts, including courts of a state, the District of Columbia, a commonwealth, territory or possession of the United States, if the person restrained by the order is an intimate partner of the protected party and has or will be afforded reasonable notice and opportunity to be heard in accordance with state law sufficient to protect due process rights (18 U.S.C §§ 2265, 2266).

**It is a federal crime to:**
• cross state lines to violate this order or to stalk, harass or commit domestic violence against an intimate partner or family member;
• buy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition while this Order remains in effect (Note: there is a limited exception for military or law enforcement officers but only while they are on duty) ; and
• buy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition after a conviction of a domestic violence-related crime involving the use or attempted use of physical force or a deadly weapon against an intimate partner or family member, even after this Order has expired (18 U.S.C. §§ 922(g)(8), 922(g)(9), 2261, 2261A, 2262).

**Check Applicable Box(es):**

[ ]  Party against whom order was issued was advised in Court of issuance and contents of Order

[ ]  Order personally served in Court upon party against whom order was issued

[x]  Service directed by other means: Other

[ ]  [Modifications or extensions only]: Order mailed on [specify date and to whom mailed]:

[ ]  Warrant issued for party against whom order was issued[specify date]: _____

[ ]  ADDITIONAL SERVICE INFORMATION [specify]: _____

F.C.A §§ 430, 550, 655, 828, 1029                                                          GF5 12/2013

**ORI No:**   NY023023J
**Order No:**   2016-019289
**NYSID No:** _____

At a term of the Family Court of the State of New York,
held in and for the County of Kings, at 330 Jay Street, Brooklyn, NY
11201, on October 13, 2016

**PRESENT: Honorable Maria Arias**

In the Matter of a FAMILY OFFENSE Proceeding

**Francesca Rossi (DOB: 06/07/1984),**
**Petitioner**

- against -

**Juan Thompson (DOB: 03/31/1985),**
**Respondent**

**File #**   246466
**Docket #**   O-19199-16
**Temporary Order of Protection**

**Ex Parte**

**NOTICE:  YOUR  FAILURE TO OBEY THIS ORDER MAY SUBJECT  YOU TO MANDATORY ARREST AND CRIMINAL PROSECUTION, WHICH MAY RESULT IN YOUR INCARCERATION FOR UP TO SEVEN YEARS FOR CRIMINAL CONTEMPT, AND/OR MAY SUBJECT YOU TO FAMILY COURT PROSECUTION AND INCARCERATION  FOR UP TO SIX MONTHS FOR CONTEMPT OF COURT. IF YOU FAIL TO APPEAR IN COURT WHEN YOU ARE REQUIRED TO DO SO, THIS ORDER MAY BE EXTENDED IN YOUR ABSENCE AND THEN CONTINUES IN EFFECT UNTIL A NEW DATE SET BY THE COURT.**

**THIS ORDER OF PROTECTION WILL REMAIN IN EFFECT EVEN IF THE PROTECTED PARTY HAS, OR CONSENTS TO HAVE, CONTACT OR COMMUNICATION WITH THE PARTY AGAINST WHOM THE ORDER IS ISSUED. THIS ORDER OF PROTECTION CAN ONLY BE MODIFIED OR TERMINATED BY THE COURT. THE PROTECTED PARTY CANNOT BE HELD TO VIOLATE THIS ORDER NOR BE ARRESTED FOR VIOLATING THIS ORDER .**

A petition under Article 8 of the Family Court Act, having been filed on August 05, 2016 in this Court and good cause having been shown, and Juan Thompson having been not present in Court.

   **NOW, THEREFORE, IT IS HEREBY ORDERED**  that Juan Thompson (DOB:03/31/1985) observe the following conditions of behavior:

[01] Stay away from:

 [A]  Francesca Rossi (DOB: 06/07/1984);

 [B]  the home of Francesca Rossi (DOB: 06/07/1984) a█████████████████████████████

 [E]  the place of employment of Francesca Rossi (DOB: 06/07/1984);

[14] Refrain from communication or any other contact by mail, telephone, e-mail, voice-mail or other electronic or any other means with Francesca Rossi (DOB: 06/07/1984);

[02] Refrain from assault, stalking, harassment, aggravated harassment, menacing, reckless endangerment, strangulation, criminal obstruction of breathing or circulation, disorderly conduct, criminal mischief, sexual abuse, sexual misconduct, forcible touching, intimidation, threats, identity theft, grand larceny, coercion or any criminal offense against Francesca Rossi (DOB: 06/07/1984);

GF-5 Page 2
O-19199-16
2016-019289

**It is further ordered** that this temporary order of protection shall remain in force until and including December 20, 2016, but if you fail to appear in court on this date, the order may be extended and continue in effect until a new date set by the Court.

**Dated:**   October 13, 2016

ENTER



**Honorable Maria Arias**

PURSUANT TO SECTION 1113 OF THE FAMILY COURT ACT, AN APPEAL FROM THIS ORDER MUST BE TAKEN WITHIN 30 DAYS OF RECEIPT OF THE ORDER BY APPELLANT IN COURT, 35 DAYS FROM THE DATE OF MAILING OF THE ORDER TO APPELLANT BY THE CLERK OF COURT, OR 30 DAYS AFTER SERVICE BY A PARTY OR THE ATTORNEY FOR THE CHILD UPON THE APPELLANT, WHICHEVER IS EARLIEST.

**The Family Court Act** provides that presentation of a copy of this order of protection to any police officer or peace officer acting pursuant to his or her special duties authorizes, and sometimes requires such officer to arrest a person who is alleged to have violated its terms and to bring him or her before the court to face penalties authorized by law.

**Federal law requires** that this order is effective outside, as well as inside, New York State. It must be honored and enforced by state and tribal courts, including courts of a state, the District of Columbia, a commonwealth, territory or possession of the United States, if the person restrained by the order is an intimate partner of the protected party and has or will be afforded reasonable notice and opportunity to be heard in accordance with state law sufficient to protect due process rights (18 U.S.C §§ 2265, 2266).

**It is a federal crime to:**
• cross state lines to violate this order or to stalk, harass or commit domestic violence against an intimate partner or family member;
• buy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition while this Order remains in effect (Note: there is a limited exception for military or law enforcement officers but only while they are on duty) ; and
• buy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition after a conviction of a domestic violence-related crime involving the use or attempted use of physical force or a deadly weapon against an intimate partner or family member, even after this Order has expired (18 U.S.C. §§ 922(g)(8), 922(g)(9), 2261, 2261A, 2262).

**Check Applicable Box(es):**

[ ]  Party against whom order was issued was advised in Court of issuance and contents of Order

[ ]  Order personally served in Court upon party against whom order was issued

[x]  Service directed by other means: Other

[ ]  [Modifications or extensions only]: Order mailed on [specify date and to whom mailed]:

[ ]  Warrant issued for party against whom order was issued[specify date]: _____

[ ]  ADDITIONAL SERVICE INFORMATION [specify]: _____

GF-5 Page 2
O-19199-16
2016-014811

It is further ordered that this temporary order of protection shall remain in force until and including October 13, 2016, but if you fail to appear in court on this date, the order may be extended and continue in effect until a new date set by the Court.

**Dated:**   August 05, 2016                                                ENTER



**Honorable Maria Arias**

PURSUANT TO SECTION 1113 OF THE FAMILY COURT ACT, AN APPEAL FROM THIS ORDER MUST BE TAKEN WITHIN 30 DAYS OF RECEIPT OF THE ORDER BY APPELLANT IN COURT, 35 DAYS FROM THE DATE OF MAILING OF THE ORDER TO APPELLANT BY THE CLERK OF COURT, OR 30 DAYS AFTER SERVICE BY A PARTY OR THE ATTORNEY FOR THE CHILD UPON THE APPELLANT, WHICHEVER IS EARLIEST.

**The Family Court Act** provides that presentation of a copy of this order of protection to any police officer or peace officer acting pursuant to his or her special duties authorizes, and sometimes requires such officer to arrest a person who is alleged to have violated its terms and to bring him or her before the court to face penalties authorized by law.

**Federal law requires** that this order is effective outside, as well as inside, New York State. It must be honored and enforced by state and tribal courts, including courts of a state, the District of Columbia, a commonwealth, territory or possession of the United States, if the person restrained by the order is an intimate partner of the protected party and has or will be afforded reasonable notice and opportunity to be heard in accordance with state law sufficient to protect due process rights (18 U.S.C §§ 2265, 2266).

**It is a federal crime to:**
• cross state lines to violate this order or to stalk, harass or commit domestic violence against an intimate partner or family member;
• buy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition while this Order remains in effect (Note: there is a limited exception for military or law enforcement officers but only while they are on duty) ; and
• buy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition after a conviction of a domestic violence-related crime involving the use or attempted use of physical force or a deadly weapon against an intimate partner or family member, even after this Order has expired (18 U.S.C. §§ 922(g)(8), 922(g)(9), 2261, 2261A, 2262).

**Check Applicable Box(es):**

[ ]  Party against whom order was issued was advised in Court of issuance and contents of Order

[ ]  Order personally served in Court upon party against whom order was issued

[x]  Service directed by other means: Process Server/Other Peace/Municipal Officer

[ ]  [Modifications or extensions only]: Order mailed on [specify date and to whom mailed]:

[ ]  Warrant issued for party against whom order was issued[specify date]: _____

[ ]  ADDITIONAL SERVICE INFORMATION [specify]: _____

Exhibit C

# NYPD Enterprise Case Management System

## INDEX SHEET
**PD-113-140(190-95)-h2**

**:**
**CASE #:** 2016-414   **CASE COMMAND:** 216-SPECIAL INVESTIGATIONS DIV   **UNIT:** COMPUTER CRIMES SQUAD   **CASE OWNER:** DT2 GERALDO RIVERA

| ITEM NO. | DATE | ITEM (Include brief description of item/subject matter) |
|---|---|---|
| 1 | 11/03/2016 | (OTHER ATTACHMENTS) INITIATE INVESTIGATION INTO NCMEC 15197994 |
| A | 11/03/2016 | (OTHER ATTACHMENTS) INITIATE INVESTIGATION INTO NCMEC 15197994 |
| 2 | 11/03/2016 | DCLM REQUEST FOR AT&T (RE: IP ADDRESS OF REPORTER) |
| 3 | 11/15/2016 | (OTHER ATTACHMENTS) AT&T SUBPOENA SERVED |
| B | 11/15/2016 | (OTHER ATTACHMENTS) AT&T SUBPOENA SERVED |
| 4 | 11/21/2016 | (OTHER ATTACHMENTS) AT&T RECODS OBTAINED |
| C | 11/21/2016 | (OTHER ATTACHMENTS) AT&T RECODS OBTAINED |
| 5 | 11/21/2016 | COMPUTER CHECKS (RE: AT&T SUBSCRIBER) |
| 6 | 11/21/2016 | (INTERVIEW TELEPHONE) JUAN THOMPSON - REPORTER |
| 7 | 11/22/2016 | ATTEMPT TO CONTACT FRANCESCA ROSSI |
| 8 | 11/30/2016 | (CLOSING) B-4 |

 **INVESTIGATION REVIEW WORKSHEET**

| DATE | FROM | COMMENTS | |
|---|---|---|---|
| 11/03/2016 1031 | DD5PINK SYSTEM | THE BASIC DOZEN<br>* NOTIFICATION & RESPONSE TO THE SCENE<br>+ INCLUDE OBSERVATIONS<br>* INVERVIEW OF THE  1ST OFFICERS(S) ON THE SCENE<br>* INTERVIEW OF THE COMPLAINT/VICTIM<br>* INTERVIEW OF THE WITNESS<br>* REVIEW OF THE SPRINT PRINTOUT<br>+ INTERVIEW OF THE 911 CALLER(S)<br>* INTERVIEW OF EMS/FD PERSONNEL<br>* CANVASSES* (SEE BELOW)<br>+ CANVASS FOR ADDITIONAL WITNESS<br>+ CANVASS FOR THE VIDEO EQUIPMENT / CAMERAS<br>+ CANVASS FOR SOURCES OF | |

ELECTIONIC INFORMATION(ATM, EZ
PASSES, ETC)
+ VEHICLE CANVASS: RECORD PLATE
NUMBERS OF PARKED VEHICLES
* WHAT IS KNOWN ABOUT THE LOCATION
OF OCCURENCE (OLCS, DIR'S,
WARRANTS, PAROLEES, KITES, ETCC.-
RTCC LOCATION FINDER)
* EVIDENCE / SEARCHES:
+ WHAT WAS RECOVERED?
+ WHO RECOVERED IT?
+ WHERE WAS IT RECOVERED?
+ WHRE IS TEH EVIDENCE(POLICE LAB,
ME, ETC.)?
   - WHAT IS THE STATUS[TESTING /
ANALYSIS]?
+ IS A DAYLIGHT SEARCH NEEDED?
+ ARE ADDIONAL SEARCHES NEEDED ?
(SEWERS, DIRECTION OF FLIGHT, ETC)
* VICTIMOLOGY (PAST ARRESTS,
DIR'S, DMV, OLCS, ETC - RTCC
PEOPLE FINDER)
* VIEWING OF PHOTOS
+ APPOINTMENT WITH THE DEPARTMENT
SKETCH ARTIST
* I-CARD SUBMITTED FOR KNOWN
PERPETRATOR(S)
* REGARDING CANVASSES: AVOID USING
TERMS LIKE NEGATIVE RESULTS, N/A
&N/R.
   DOCUMENT WHO YOU SPOKE TO AND
THE SPECIFIC LOCATIONS THAT WERE
CHECKED.
   **ALSO CONSIDER 24 HOUR AND 7
DAY CANVASSES.**

| OTHER ATTACHMENTS | | Crime/Condition | Command |
|---|---|---|---|
| | | | 216-SPECIAL INVESTIGATIONS DIVISION |
| | | | **Date of This Report** |
| | | | 11/03/2016 |

| Date of UF61 11/03/2016 | Complaint No. | Date Case Assigned 11/03/2016 | Case No. 2016 - 414 | Unit Reporting SQUAD | Follow-Up No. 1 |
|---|---|---|---|---|---|

| Topic/Subject (OTHER ATTACHMENTS) INITIATE INVESTIGATION INTO NCMEC 15197994 | | Activity Date 11/03/2016 | Activity Time 11:50 |
|---|---|---|---|

| Complainant's Name | Address | | Apt No. |
|---|---|---|---|
| Nickname/Alias/Middle Name | | | |

| Sex | Race | Date of Birth | Age | |
|---|---|---|---|---|
| Home Telephone | Business Telephone | Cell Phone | Beeper # | E-Mail Address |

| Person Interviewed Last Name, First M.I. | Address | | Apt No. |
|---|---|---|---|
| Nickname/Alias/Middle Name | | | |

| Position/Relationship | Sex | | Race | Date of Birth | Age |
|---|---|---|---|---|---|
| Home Telephone | Business Telephone | | Cell Phone | Beeper # | E-Mail Address |
| **Details** | | | | | |

**Summary of Investigation:**

1. On November 3, 2016, at approximately 1150 hrs I initiated this investigation into NCMEC cybertip 15197994, the details are as follows;

Anonymous reporter;

Submitter:
IP Address: 107.201.70.110 (St Louis, Missouri = AT&T Uverse)
Received by NCMEC on 10-30-2016 01:12:41 UTC

Incident Time: 10-15-2016 04:00:00 UTC

Additional Information: I was at a disco-tech two weeks ago and met a Francescha Rossi who said she watched child
porn. I thought she was joking until she showed me two pictures, on her phone, of a child
engaged in sex acts.

Relationship to Reporter: N?A
Name: Francescha Rossi
Address: 226 Van Buren St Apartment 4
Brooklyn 11206 US
Approximate Age: 32
Occupation: Social Worker
Email Address: ███████████
Profile URL: www.instagram.com/frantastickk
Additional Information: I think she works at Kenmore Hall 145 East 23rd street, New york, new york. (212) 228-4242

2. ICAC COPS Deconflict - no other cases bearing similarities. ICAC Data System - no other cases bearing similarities. This IP has been claimed by the U/S and is reflected in the Deconflict check.

3. See attached.

| Activity Address Location OFFICE | | Street | City | State | Zip | Apt # |
|---|---|---|---|---|---|---|
| **Cross Street** | | | Intersection of and | | Premise Type | |

| ATTACHMENT | | |
|---|---|---|
| N o | Attachment | Description |
| 1 | [PDF] _1478189818095_15197994.pdf_ | 147818981 8095_1519 7994.pdf |

2

147818982
3760_insta
gram-f.png



| 3 | PDF  1478189830030_ncmec151979.pdf | 147818983 0030_ncme c151979.pd f |
| 4 | PDF  1478189838457_ncmec151979.pdf | 147818983 8457_ncme c151979.pd f |
| 5 | PDF  1478189844830_ncmec151979.pdf | 147818984 4830_ncme c151979.pd f |

| Reporting Officer: | Rank  DT2 | Name  GERALDO RIVERA | | Tax Reg. No.  927419 | Command  216-SPECIAL INVESTIGATIONS DIVISION |
|---|---|---|---|---|---|
| Reviewing Supervisor: | Manner of Closing  - | Date Reviewed  11/08/2016 | Date of Next Review | Name  FELIX RIVERA | Supv. Tax No. ▮▮▮▮ |

| GENERAL INVESTIGATION | Crime/Condition | Command  216-SPECIAL INVESTIGATIONS DIVISION  Date of This Report  11/07/2016 |
|---|---|---|

| Date of UF61  11/03/2016 | Complaint No. | Date Case Assigned  11/03/2016 | Case No.  2016 - 414 | Unit Reporting  SQUAD | Follow-Up No.  2 |
|---|---|---|---|---|---|

| Complainant's Name | | Address | Apt No. |
|---|---|---|---|

| Nickname/Alias/Middle Name |
|---|

| Sex | Race | | Date of Birth | Age |
|---|---|---|---|---|

| Home Telephone | Business Telephone | Cell Phone | Beeper # | E-Mail Address |
|---|---|---|---|---|

| Activity Address Location  OFFICE | | Street | City | State | Zip | Apt # |
|---|---|---|---|---|---|---|

| Cross Street | Intersection of  and | Premise Type |
|---|---|---|

| Activity Date  11/03/2016 | Activity Time  14:30 |
|---|---|

**Topic/Subject:**
**DCLM REQUEST FOR AT&T (RE: IP ADDRESS OF REPORTER)**

**Summary of Investigation:**
1. On November 3, 2016, at approximately 1430 hrs I prepared a DCLM request to AT&T Internet services with regards to this investigation.

2. The reporter submitted this tip and his/her IP address was captured. I am attempting to identify the reporter in this case..

| Reporting Officer: | Rank  DT2 | Name  GERALDO RIVERA | Tax Reg. No.  927419 | Command  216-SPECIAL INVESTIGATIONS DIVISION |
|---|---|---|---|---|
| Reviewing Supervisor: | Manner of Closing  - | Date Reviewed  11/08/2016 | Date of Next Review | Name  FELIX RIVERA | Supv. Tax No.  920765 |

| OTHER ATTACHMENTS | | | | Crime/Condition | Command |
|---|---|---|---|---|---|
| | | | | | 216-SPECIAL INVESTIGATIONS DIVISION |
| | | | | | **Date of This Report** |
| | | | | | 11/15/2016 |

| Date of UF61 | Complaint No. | Date Case Assigned | Case No. | Unit Reporting | Follow-Up No. |
|---|---|---|---|---|---|
| 11/03/2016 | | 11/03/2016 | 2016 - 414 | SQUAD | 3 |

| Topic/Subject | Activity Date | Activity Time |
|---|---|---|
| (OTHER ATTACHMENTS) AT&T SUBPOENA SERVED | 11/15/2016 | 16:20 |

| Complainant's Name | | Address | | Apt No. |
|---|---|---|---|---|
| **Nickname/Alias/Middle Name** | | | | |
| **Sex** | **Race** | **Date of Birth** | **Age** | |
| **Home Telephone** | **Business Telephone** | **Cell Phone** | **Beeper #** | **E-Mail Address** |

| Person Interviewed Last Name, First M.I. | | Address | | Apt No. |
|---|---|---|---|---|
| **Nickname/Alias/Middle Name** | | | | |
| **Position/Relationship** | **Sex** | **Race** | **Date of Birth** | **Age** |
| **Home Telephone** | **Business Telephone** | **Cell Phone** | **Beeper #** | **E-Mail Address** |

**Details**

**Summary of Investigation:**

1. On November 15, 2016, at approximately 1620 hrs I received the AT&T subpoena I applied for and served it to AT&T as per their protocol for processing.

2. See attached.

| Activity Address Location | Street | City | State | Zip | Apt # |
|---|---|---|---|---|---|
| OFFICE | | | | | |

| Cross Street | Intersection of | Premise Type |
|---|---|---|
| | and | |

**ATTACHMENT**

| No | Attachment | Description |
|---|---|---|
| 1 | 📄 PDF  1479244916032_14792449160.pdf | 1479244916032_14792449160.pdf |

| Reporting Officer: | Rank | Name | | Tax Reg. No. | Command |
|---|---|---|---|---|---|
| | DT2 | GERALDO RIVERA | | ▇▇▇ | 216-SPECIAL INVESTIGATIONS DIVISION |

| Reviewing Supervisor: | Manner of Closing | Date Reviewed | Date of Next Review | Name | Supv. Tax No. |
|---|---|---|---|---|---|
| | - | 11/18/2016 | | FELIX RIVERA | ▇▇▇ |

| OTHER ATTACHMENTS | | | Crime/Condition | Command |
|---|---|---|---|---|
| | | | | 216-SPECIAL INVESTIGATIONS DIVISION |
| | | | | **Date of This Report** |
| | | | | 11/21/2016 |

| Date of UF61 | Complaint No. | Date Case Assigned | Case No. | Unit Reporting | Follow-Up No. |
|---|---|---|---|---|---|
| 10/18/2016 | | 10/18/2016 | 2016 - 414 | SQUAD | 4 |

| Topic/Subject | Activity Date | Activity Time |
|---|---|---|

| (OTHER ATTACHMENTS) AT&T RECODS OBTAINED | | 11/21/2016 | 19:30 |
|---|---|---|---|
| **Complainant's Name** | | **Address** | **Apt No.** |
| **Nickname/Alias/Middle Name** | | | |

| **Sex** | **Race** | | **Date of Birth** | **Age** | |
|---|---|---|---|---|---|
| **Home Telephone** | **Business Telephone** | | **Cell Phone** | **Beeper #** | **E-Mail Address** |
| **Person Interviewed Last Name, First M.I.** | | | **Address** | | **Apt No.** |
| **Nickname/Alias/Middle Name** | | | | | |
| **Position/Relationship** | **Sex** | | **Race** | **Date of Birth** | **Age** |
| **Home Telephone** | **Business Telephone** | | **Cell Phone** | **Beeper #** | **E-Mail Address** |

**Details**

**Summary of Investigation:**

1. On November 21, 2016, at approximately 1930 hrs I received and attached the AT&T Records obtained with regards to this investigation.

2. The reported filed this complaint electronically to NCMEC and the IP was captured as 107.201.70.110. This IP is subscribed to

Elijah Lampkin

5812 Wabada Avenue

Saint Louis MO 631123812

Email: lampkinelijah80@gmail.com Phone (314) 322-0861

3. See attached.

| **Activity Address Location**<br>OFFICE | | **Street** | **City** | **State** | **Zip** | **Apt #** |
|---|---|---|---|---|---|---|
| **Cross Street** | | **Intersection of**<br>and | | | **Premise Type** | |

**ATTACHMENT**

| No | Attachment | Description |
|---|---|---|
| 1 |  1479775263030_14797752630.pdf | 1479775263030_14797752630.pdf |
| 2 |  1479775268807_14797752688.pdf | 1479775268807_14797752688.pdf |

| Reporting Officer: | **Rank**<br>DT2 | **Name**<br>GERALDO RIVERA | | **Tax Reg. No.** | **Command**<br>216-SPECIAL<br>INVESTIGATIONS DIVISION |
|---|---|---|---|---|---|
| Reviewing Supervisor: | **Manner of Closing**<br>- | **Date Reviewed**<br>11/21/2016 | **Date of Next Review** | **Name**<br>FELIX<br>RIVERA | **Supv. Tax No.** |

| **GENERAL INVESTIGATION** | | **Crime/Condition** | **Command**<br>216-SPECIAL INVESTIGATIONS<br>DIVISION<br>**Date of This Report**<br>11/21/2016 |
|---|---|---|---|
| **Date of** | **Complaint No.** | **Date Case** | **Case No.** | **Unit Reporting** | **Follow-Up No.** |

| UF61 11/03/2016 | | Assigned 11/03/2016 | 2016 - 414 | SQUAD | 5 |
|---|---|---|---|---|---|

| Complainant's Name | | Address | | Apt No. |
|---|---|---|---|---|

| Nickname/Alias/Middle Name |
|---|

| Sex | Race | | Date of Birth | Age |
|---|---|---|---|---|

| Home Telephone | Business Telephone | Cell Phone | Beeper # | E-Mail Address |
|---|---|---|---|---|

| Activity Address Location OFFICE | | Street | City | State | Zip | Apt # |
|---|---|---|---|---|---|---|

| Cross Street | Intersection of and | Premise Type |
|---|---|---|

| Activity Date 11/21/2016 | Activity Time 19:50 |
|---|---|

**Topic/Subject:**
COMPUTER CHECKS (RE: AT&T SUBSCRIBER)

**Summary of Investigation:**
1. On November 21, 2016, at approximately 1950 hrs I conducted the following computer checks for the subscriber of the target IP address (for reporter).

- DAS Lite - no match for the name Elijah Lampkin or phone number 314-322-0861

- SPOKEO - revealed a hit for the email to the address matching that of the subscriber, 5812 Wabada Avenue, St. Louis, MO 63112. Upon clicking on this address link it revealed the property owner as Yolanda Thompson and the following relatives;

Kenneth Thompson
Saherra Thompson
James Thompson
Shelia Thompson
JUAN THOMPSON.

2. The reporter in this case provided detail information of the subject. Computer checks for the subject revealed a Domestic Violence history in which she claimed her ex-boyfriend JUAN THOMPSON was harassing her over the phone and via email. JUAN THOMPSON has a nexus to this IP address and therefore is believed to be the reporter in this case.

| Reporting Officer: | Rank DT2 | Name GERALDO RIVERA | | Tax Reg. No. ▇▇▇ | Command 216-SPECIAL INVESTIGATIONS DIVISION |
|---|---|---|---|---|---|
| Reviewing Supervisor: | Manner of Closing - | Date Reviewed 11/29/2016 | Date of Next Review | Name JAMES DUKE | Supv. Tax No. ▇▇▇ |

| INTERVIEW TELEPHONE | | | Crime/Condition | Command 216-SPECIAL INVESTIGATIONS DIVISION Date of This Report 11/22/2016 |
|---|---|---|---|---|

| Date of UF61 11/03/2016 | Complaint No. | Date Case Assigned 11/03/2016 | Case No. 2016 - 414 | Unit Reporting SQUAD | Follow-Up No. 6 |
|---|---|---|---|---|---|

| Topic/Subject (INTERVIEW TELEPHONE) JUAN THOMPSON - REPORTER | | Activity Date 11/21/2016 | Activity Time 20:30 |
|---|---|---|---|

| Complainant's Name | | Address | | Apt No. |
|---|---|---|---|---|

| Nickname/Alias/Middle Name |
|---|

| Sex | Race | | Date of Birth | Age |
|---|---|---|---|---|
| Home Telephone | Business Telephone | Cell Phone | Beeper # | E-Mail Address |

| Person Interviewed Last Name, First M.I.<br>THOMPSON, JUAN | Address<br>5812 WABADA AVENUE SAINT LOUIS MO 63112 | | Apt No. |
|---|---|---|---|

| Nickname/Alias/Middle Name |
|---|

| Position/Relationship | Sex<br>MALE | Race | Date of Birth<br>03/31/1985 | Age<br>31 |
|---|---|---|---|---|
| Home Telephone<br>314-322-0861 | Business<br>Telephone<br>999-999-9999 | Cell Phone<br>999-999-9999 | Beeper # | E-Mail Address<br>NONE@NONE.COM |

| Details |
|---|

**Summary of Investigation:**

1. On November 22, 2016, at approximately 2030 hrs I called the AT&T subscriber whom IP address was captured by NCMEC as the reporter.

2. I asked to speak with Elijah Lampkin and the man that answer the call identified himself to me as Elijah. I asked Mr. Lampkin if he knew a Juan Thompson and he stated he did not. I informed him that I was calling from NYC pertaining to an investigation and I needed to make a notification to anyone related to Mr. Thompson. Mr. Lampkin then placed me on a brief hold and then another male took the call. The male identified himself as Juan Thompson as formerly residing in NYC. Mr. Thompson stated Francesca Rossi was his ex-girlfriend when asked if he knew who she was. Mr. Thompson states they have been broken up for several months and further states upon breaking up with her he moved back home to Missouri where he lives with his mother and step father Elijah Lampkin.

3. I informed him that an allegation was made against Francesca Rossi regarding being in possession of child pornographic photos. I asked Mr. Thompson if he has ever seen or known Francesca to be in possession of child porn images. Mr. Thompson stated he did not but states a few days ago he received an email from a male (he did not wish to identify). He states the email contained a video of Francesca having sex. I asked Mr. Thompson if he has been in contact with Francesca and he stated not since leaving NY. He states they filed reports against each other for harassment but states he does not engage in communication with her. I informed Mr. Thompson that the allegation made in this case was submitted using the IP address where he resides. Mr. Thompson states he did not submit the tip and further states his email accounts were hacked a few weeks ago. Mr. Thompson states he would be willing to forward me a forensic report produced by a tech he hired to triage his computer. I provided him with m email address and requested all the documents he had that support he was the victim of a crime.

4. I informed Mr. Thompson that he is not to contact Francesca Rossi under no circumstances. I also informed him that I would be contacting her to inform her of this allegation and to ensure she does not communicate with him.

| Activity Address Location<br>OFFICE | | Street | City | State | Zip | Apt # |
|---|---|---|---|---|---|---|
| Cross Street | | | Intersection of<br>and | | Premise Type | |

| Reporting Officer: | Rank<br>DT2 | Name<br>GERALDO RIVERA | | Tax Reg.<br>No.<br>██████ | Command<br>216-SPECIAL INVESTIGATIONS DIVISION |
|---|---|---|---|---|---|
| Reviewing<br>Supervisor: | Manner of<br>Closing<br>- | Date<br>Reviewed<br>11/29/2016 | Date of Next<br>Review | Name<br>JAMES<br>DUKE | Supv. Tax No.<br>██████ |

| | **GENERAL INVESTIGATION** | Crime/Condition | Command<br>216-SPECIAL INVESTIGATIONS DIVISION<br>**Date of This Report**<br>11/22/2016 |
|---|---|---|---|

| Date of UF61 11/03/2016 | Complaint No. | Date Case Assigned 11/03/2016 | Case No. 2016 - 414 | Unit Reporting SQUAD | Follow-Up No. 7 |
|---|---|---|---|---|---|

| Complainant's Name | | | Address | | Apt No. |
|---|---|---|---|---|---|

| Nickname/Alias/Middle Name |
|---|

| Sex | Race | | Date of Birth | Age | |
|---|---|---|---|---|---|

| Home Telephone | Business Telephone | Cell Phone | Beeper # | E-Mail Address |
|---|---|---|---|---|

| Activity Address Location OFFICE | | Street | City | State | Zip | Apt # |
|---|---|---|---|---|---|---|

| Cross Street | | Intersection of and | | Premise Type |
|---|---|---|---|---|

| Activity Date 11/22/2016 | | Activity Time 21:20 |
|---|---|---|

| Topic/Subject: **ATTEMPT TO CONTACT FRANCESCA ROSSI** |
|---|

**Summary of Investigation:**

1. On November 22, 2016, at approximately 2120 hrs I attempted to contact Francesca Rossi with regards to this investigation.

2. The phone number listed on a complaint report she filed in August is disconnected.

3. I emailed her requesting she contact me.

| Reporting Officer: | Rank DT2 | Name GERALDO RIVERA | | Tax Reg. No. ███ | Command 216-SPECIAL INVESTIGATIONS DIVISION |
|---|---|---|---|---|---|

| Reviewing Supervisor: | Manner of Closing - | Date Reviewed 11/29/2016 | Date of Next Review | Name JAMES DUKE | Supv. Tax No. ███ |
|---|---|---|---|---|---|

| **CLOSING** | | Crime/Condition | Command 216-SPECIAL INVESTIGATIONS DIVISION Date of This Report 11/30/2016 |
|---|---|---|---|

| Date of UF61 11/03/2016 | Complaint No. | Date Case Assigned 11/03/2016 | Case No. 2016 - 414 | Unit Reporting SQUAD | Follow-Up No. 8 |
|---|---|---|---|---|---|

| Complainant's Name | | Address | Apt No. |
|---|---|---|---|

| Nickname/Alias/Middle Name |
|---|

| Sex | Race | Date of Birth | Age | |
|---|---|---|---|---|

| Home Telephone | Business Telephone | Cell Phone | Beeper # | E-Mail Address |
|---|---|---|---|---|

| Activity Address Location OFFICE | Street | City | State | Zip | Apt # |
|---|---|---|---|---|---|

| Cross Street | Intersection of and | | Premise Type |
|---|---|---|---|

| Activity Date 11/30/2016 | | Activity Time 17:30 |
|---|---|---|

| Topic/Subject: **(CLOSING) B-4** |
|---|

| Summary of Investigation: |
|---|

1. On November 30, 2016, at approximately 1730 hrs I am requesting this case be closed B-4, non criminal investigation.

2. A report was received by NCMEC electronically and assigned for investigation. The reporter alleged the subject was in possession of child pornography images. The U/S conducted computer checks on the subject which revealed the subject was the victim of several harassment complaints. The perpetrator was her ex-boyfriend. Records obtained revealed her ex-boyfriend submitted the online allegation from a computer accessing a ISP in St. Louis Missouri. The U/S contacted and interviewed the reporter (ex-boyfriend) who is residing in St. Louis and was informed by him that he has never seen child pornography on the subjects cell phone or computers while they were together. I informed him that harassment is a crime and to stop contacting the subject of this NCMEC, his ex-girlfriend.

3. Based on the computer checks and passed complaints the subject reporter is deemed not credible and I am requesting this case be closed B-4, non criminal. The subject of this NCMEC resides in Brooklyn and does not have children in common with the reporter, ex-boyfriend.

| Reporting Officer: | Rank DT2 | | Name GERALDO RIVERA | | Tax Reg. No. ███ | Command 216-SPECIAL INVESTIGATIONS DIVISION |
|---|---|---|---|---|---|---|
| Reviewing Supervisor: | Manner of Closing B-4 - B-4 NON-CRIMINAL INVESTIGATION | | Date Reviewed 12/07/2016 | Date of Next Review | Name FELIX RIVERA | Supv. Tax No. ███ |

Exhibit D

⌂ 🔒 os://mobile.twitter.com/. 1️⃣ ⋮

Open in Twitter App ✕

🐦 🔍

| Sign up | Log in |
|---|---|

↩ ⇄ 1 ♡ 1 ✉

**Juan M. Thompson** @JuanMThom.. Feb 24
Know any good lawyers? Need to stop this nasty/racist #whitegirl I dated who sent a bomb threat in my name & wants me to be raped in jail.

> Two years ago, after swearing off white women, I started dating one named Francesca. She seemed like a cool Brooklyn white radical. There where warning signs though; she didn't tell me she had herpes until AFTER we hooked up; she called me a thug, in an approving way, because she liked I was wearing Js and balling shorts after the gym; and she called herself captain save-a-thug---a reference to the type of black men she dated.
>
> We broke up after someone showed me the light, and since then she's stalked and harassed me. Threatened to have me killed, and said she was going to make me a prison "statistic" and looked forward to me being "raped" in prison. Francesca, btw, is the clincical director at a promiment NYC nonprofit.
>
> She, though I can't prove it, even sent a bomb threat in my name to a Jewish center, which was odd given her antisemitic statements. I got a visit from the FBI. So now I'm battling the racist FBI and this vile, evil, racist white woman. I'm afraid. . . we know what happens when white women use the law to go after black men.

↩ ⇄ 1 ♥ 1 ✉

⇄ Juan M. Thompson Retweeted

🚩 🏖 ☭ @joshbriond Jan 29
when you handed a fascist the matches &



TWEETS **2,129**  FOLLOWING **386**  FOLLOWERS **3,172**  LIKES **653**    ⚙ | 👤 Follow

**Tweets**    Tweets & replies    Media

🏠 Home    ⚡ Moments    🔔 Notifications    ✉ Messages    🐦    [Search Twitter 🔍]

You show me a capitalist, and I'll show you a bloodsucker | Director of Communications--Gateway Housing Foundation | thompsonotherkin@gmail.com

📍 What Fresh Hell Is This?
📅 Joined July 2010

✎ Tweet to Juan M. Thompson

📷 **190 Photos and videos**

 

 

**Juan M. Thompson** @JuanMThompson · Feb 24    ⌄

Know any good lawyers? Need to stop this nasty/racist #whitegirl I dated who sent a bomb threat in my name & wants me to be raped in jail.

Two years ago, after swearing off white women, I started dating one named Francesca. She seemed like a cool Brooklyn white radical. There where warning signs though; she didn't tell me she had herpes until AFTER we hooked up; she called me a thug, in an approving way, because she liked I was wearing Js and balling shorts after the gym; and she called herself captain save-a-thug---a reference to the type of black men she dated.

We broke up after someone showed me the light, and since then she's stalked and harassed me. Threatened to have me killed, and said she was going to make me a prison "statistic" and looked forward to me being "raped" in prison. Francesca, btw, is the clincical director at a prominent NYC nonprofit.

She, though I can't prove it, even sent a bomb threat in my name to a Jewish center, which was odd given her antisemitic statements. I got a visit from the FBI. So now I'm battling the racist FBI and this vile, evil, racist white woman. I'm afraid. . . we know what happens when white women use the law to go after black men.

↩ 4      ⇄ 2      2

**Juan M. Thompson** @JuanMThompson · 18h    ⌄

Y'all know how to get a social worker in NY barred? I'm being stalked and harassed by a white nasty white woman Francesca

USAO_000338

Rossi in NYC.

↩ 2      ⇄ 2



**Juan M. Thompson** @JuanMThompson · 18h

The @SecretService visited me looked at my tweets, questioned my politics b/c some awful white woman I date reported me. I won't be silenced

↩      ⇄ 8      12

**Juan M. Thompson** @JuanMThompson · 18h

.@SecretService Francesca Rossi, a disgusting nasty racist white woman, who filed a false lie against me, has threatened to kill Trump.

↩      ⇄ 1      1

**Juan M. Thompson** @JuanMThompson · 18h

.@SecretService She is unstable and violent. I'm a witness I can I testify.

↩      ⇄ 1      1

**Juan M. Thompson** @JuanMThompson · 18h

.@SecretService Francesca Rossi has made death threats against Trump. And talked about how she wanted to kill him and his kids. Look at her.

↩      ⇄ 1      2

**Juan M. Thompson** @JuanMThompson · 18h

1) Two wks ago it was a visit from the FBI. Right now the Secret Service. This racist white garbage Francesca Rossi is trash.

↩      ⇄ 1      1

Juan M. Thompson Retweeted

**Bigshotprof** @thebigshotprof · 21h

#Oscars 🏆 ratings are down again. Maybe we're getting sick of royalty.

↩ 1      ⇄ 3      1

**Juan M. Thompson** @JuanMThompson · 21h

USAO_000339

 International Polar Bear Day



↩    ⇄    1

Juan M. Thompson Retweeted

**Bullshit Mrs Han-Man** @commietantric · 22h        ⌄

02/27/1933

Reichstag building fire gives Nazis further pretext to suspend personal liberty with increased power.



↩  1    ⇄  14    21

Juan M. Thompson Retweeted

**Matty** @Reverend_Banjo · 23h        ⌄

There can't be a middle class without an upper and lower (working) class. I don't care about the "shrinking middle class."

USAO_000340

class. I don't care about the "shrinking middle class."

↩ 10    ↻ 16

**Juan M. Thompson** @JuanMThompson · 22h    ⌄

Clinton on Qaddafi: "We came, we saw, he died."

You know something about hate crimes.

> **Hillary Clinton** ✔ @HillaryClinton
> With threats & hate crimes on rise, we shouldn't have to tell @POTUS to do his part. He must step up & speak out.
> kansascity.com/news/local/cri…

↩    ↻    1

Juan M. Thompson Retweeted

**David Simmons** @Ay0kunnu · Feb 17    ⌄

Brazil's New Black Power Movement



> **Brazil's New Black Power Movement**
> The new black power movement in Brazil is big.Brazil is known for its beautiful beaches, beautiful women, samba, sun and celebration. For de...
> flip.it

↩    ↻ 24    29

Juan M. Thompson Retweeted

**Ella Septima-Hamer** @Jbrous14 · 22h    ⌄

Liberals quoting Bush. Yeah, you mfers is dead.

↩ 3    ↻ 22    44

Juan M. Thompson Retweeted

**JewishVoiceForPeace** ✔ @jvplive · 23h    ⌄

Reports of bomb threats at JCCs & Jewish schools, and another Jewish cemetery desecrated in Philadelphia. Sending love to our community

↩ 4    ↻ 58    73

Juan M. Thompson Retweeted

**ginavergel** @ginavergel7 · 23h    ⌄

CRAZY how precient @TheSimpsons was abt Trump. APU is

USAO_000341

CRAZY how prescient @TheSimpsons was abt Trump. APU is CARLOS from 2days's @nytimes. h/t @pverel youtube.com/watch?v=EEux8l… cc @captainkicker



Rich Vee

↩ 1    ⟲ 1         1

**Juan M. Thompson** @JuanMThompson · 23h                    ⌄

Another week, another round of threats against Jewish ppl. In the middle of the day, you know who's at a JCC? Kids. KIDS.

↩         ⟲ 2

**Juan M. Thompson** @JuanMThompson · 23h                    ⌄

The white media is repulsive. Provocateur is what they call white supremacists b/c, at their core, they support the agenda. #GeertWilders

> EUROPE
>
> *Geert Wilders, Reclusive Provocateur, Rises Before Dutch Vote*
>
> By ALISSA J. RUBIN  FEB. 27, 2017
>
> RELATED COVERAGE
> Geert [...] Politica 'Scum'
> Geert [...] Convic [...] DEC. [...]
> Marin [...] Speed [...]

↩         ⟲              1

🔁 Juan M. Thompson Retweeted



**Heidi N Moore** ✔ @moorehn · 24h

Jesus. WTH.

**Haaretz.com** ✔ @haaretzcom

UPDATE: Bomb threats target at least 13 Jewish centers in 10 U.S. states haaretz.com/us-news/1.7742…

2    11    11

Juan M. Thompson Retweeted

**shauna** ✔ @goldengateblond · Feb 27

Donald Trump, Jr: champion of the little people

**Donald Trump Jr.** ✔ @DonaldJTrumpJr

Interesting mistake, its almost like Hollywood doesn't really care about the little people behind the scenes...
#oscars
#oscarsfail

**The New York Times** ✔ @nytimes
The Oscars' in memoriam montage showed an Australian producer who is still alive nyti.ms/2lgBgC5

**Donald Trump Jr.** ✔ @DonaldJTrumpJr

At dinner w our greenskeep missed his sister's wedding (luv loyalty 2 us) "No big dea hopefully she'll have anothe someday");)

6/22/12, 2:36 PM

184    2.1K    4.4K

Juan M. Thompson Retweeted

**sick transit, gloria** @samknight1 · Feb 27

Burnt steak and lying about refugees is the new counter culture

**Paul Joseph Watson** ✔ @PrisonPlanet
Fact: Only idiot hipsters who are trying to be trendy order their steaks anything less than medium-well. jezebel.com/donald-trump-e…

7    28    108

Juan M. Thompson Retweeted

**blk velvet mustache** ✔ @anthoknees · Feb 27

1. Yes, fuck white validation. AND:
2. Do you realize how important it is to hear BLACK MEN TALK ABOUT GENDER NONCONFORMITY?!

**USA TODAY** ✔ @USATODAY
'Moonlight' writers: This goes out to black and brown boys, girls and non-gender conforming who don't see themselves usat.ly/2mu3DyK

2    1.2K    2.2K

Juan M. Thompson Retweeted

**Austintifada** @Austintifada · Feb 26

Trying to explain to white liberals that you can still be racist without

USAO_000343

Juan M. Thompson (@Juan...ompson, ... twitter... 2/28/17, 11:32 AM

Trying to explain to white liberals that you can still be racist without being a Trump-supporting Neo-Nazi KKK member.



↩ 8          ⇄ 801          1.8K

---

Juan M. Thompson Retweeted

**Big Sharia Jeb Malmö** ✓ @Mobute · Feb 26                         ⌄

thought i'd mention that ken burns' civil war is back on netflix in case looking at a lot of dead confederates will make you feel better rn

↩ 20          ⇄ 156          776

---

**Juan M. Thompson** @JuanMThompson · Feb 27                         ⌄

Actually Hidden Fences won. #Oscars 🏆

↩          ⇄ 2          2

---

**Juan M. Thompson** @JuanMThompson · Feb 27                         ⌄

Wow. The #Oscars 🏆 are fucking and toying and exploiting black ppl like America has done for centuries. White folk are trash.

↩ 1          ⇄ 1          1

---

Juan M. Thompson Retweeted

@Younglionking7 · Feb 26                                             ⌄

White people are obsessed with talking about ass and wonder why they call you infidel lmao

> **Jonathan** @JonJ_L
> @sawmilltaters looks like he got the yeast infection in that beard that probably smells like goats ass..

↩ 3          ⇄ 2          1

---

**Juan M. Thompson** @JuanMThompson · Feb 26                         ⌄

The #Oscars 🏆 & its relation to black art is the perf def of white supremacy. Black art isn't great until recognized by white folk. Fuck off.

↩ 1          ⇄          1

---

**Juan M. Thompson** @JuanMThompson · Feb 26                         ⌄

USAO_000344



Hey black folk, a millionaire winning a statute of a golden white man is not liberation. That is all. #Oscars 🏆

↩ 1     🔁 5     10

**Juan M. Thompson** Retweeted

**Wendi Muse** @MuseWendi · Feb 26

just a necessary reminder that george w. bush is a war criminal. that is all.

↩ 12     🔁 63     199

**Juan M. Thompson** @JuanMThompson · Feb 26

Ppl love the #Oscars 🏆 where a bunch of millionaires receive little golden statues. The Oscars rep the worst of America.

↩         🔁         4

**Juan M. Thompson** Retweeted

**Deion of House Stark** @DeionGottaSTFU · Feb 26

First time I saw this dude was on "Black Mirror" he was taking an L chasing after white women, this nigga never learned his lesson

↩ 51     🔁 6.3K     9.2K

**Juan M. Thompson** Retweeted

**Jonathan Cohn** @JonathanCohn · Feb 26

Mel Gibson is getting awards? How has he not been blacklisted for being an antisemite, a racist, and a misogynist?

↩ 7     🔁 15     61

**Juan M. Thompson** Retweeted

**mewtwo was right** @thoneycombs · Feb 26

this is obvi a bad tweet, but what's interesting is what it says about the reactionary liberal mind

**Bill Maher** ✓ @billmaher · 11m

I think Trump just wrapped up 2020.

↩ 365     🔁 231     ♥ 808

USAO_000345



↩ 4      ⇄ 15      59

**Juan M. Thompson** @JuanMThompson · Feb 26    ⌄

Giving a pedophile/racist/fetishist a platform is ok, but how dare some H-wood liberals speak? White liberals are evil paradoxes. #Oscars 🏆

> **Bill Maher** ✓ @billmaher
> I think Trump just wrapped up 2020.

↩      ⇄ 2      2

**Juan M. Thompson** @JuanMThompson · Feb 26    ⌄

And ppl says Jews don't face bigotry and violence. How would you feel if nasty white ppl destroyed MLK's gravesite? #philadelphia

↩      ⇄ 2      1

**Juan M. Thompson** @JuanMThompson · Feb 26    ⌄

The hatred of Jews goes across all demos. Ask NYC's @hsiny. They employ a filthy antisemite in Francesca Rossi. These ppl are evil. #Philly

> **Yusuf Musulmán** @AvenidaDe1aPaz
> A Philadelphia Jewish cemetery vandalized.
>
> Why can't our president even say the words?…

↩      ⇄      2

🔁 Juan M. Thompson Retweeted

**Maxine_Slaughters** @a_for2day · Feb 26    ⌄

stop white women 2017. yall have done MORE than enough 😒

> Leslie Jones makes fun of w women supporting Black Lives Matter
> **Brittany Pettibone** @BrittPettibone
> Leslie Jones wants to "punch White women in the mouth" who support BLM.
>
> OK, so Whites cannot oppose BLM, nor can they…

↩      ⇄ 1      2

**Juan M. Thompson** @JuanMThompson · Feb 25    ⌄

Trump isn't attending the White Correspondents Dinner, also, b/c he's a coward who can't take ppl making fun of him.

↩      ⇄ 4      6

USAO_000346



Juan M. Thompson Retweeted

**squatting slav** ↗ @soyvietunion · Feb 25

The two party system keeps us locked into capitalism and imperialism through giving us the illusion of choice #resistcapitalism

↩    ⟲ 4    14

---

Who to follow · Refresh
· View all



**Spectru...**    ✕
Follow

**The New ...**    ✕
Follow

**Azi** ✓ @Azi    ✕
Follow

Find friends

---

Trends · Change

**#FatTuesday**
27.8K Tweets

**#Oscars** 🏆    LIVE
Replay: The Vanity Fair
Oscar Party Show

**#SMWNYC**
2,196 Tweets

**Oval Office**
These Kellyanne Conway
pictures caused quite an

**#Hoboken**

**#RareDiseaseDay**
20.2K Tweets

**Lauren London**
17.3K Tweets

**Betsy DeVos**
18.2K Tweets

**#ReadAcrossAmerica**
3,197 Tweets

**David Wright**
2,461 Tweets

© 2017 Twitter   About

USAO_000347

Help Center   Terms
Privacy policy   Cookies
Ads info

USAO_000348

Exhibit E

**Subject:** Fwd:
**From:**    Juan Thompson <thompsonotherkin@gmail.com>
**Date:**    9/30/2016 11:48 PM
**To:**      "Muffler, Robert J" <rjmuffler@slmpd.org>

The hacker or hackers tweeted at my sister, who told me about. I then looked at the timeline and noticed they were engaged with someone who was very familiar with me. My friend, below, then engaged that account and this is what happened.
---------- Forwarded message ----------
From: **Veronica Reeves** <veronicareeves6@gmail.com>
Date: Thu, Sep 29, 2016 at 7:14 PM
Subject:
To: thompsonotherkin@gmail.com



Ok Juan ... your a coward... I'm the guy who lives& loves Juan . Obviously you get your female bullying tactics from your father. Researching you has been quite a laugh. Your a character. So how about this. You never contact,disparage,remark,email,threaten,try to contact her again. At her work,home,thru friends or relatives using electronic means,phone(cell or landline),email,text or in person. Thru YOUR friends, relatives or other persons true or fake. If you comply. It will end here. Except if you show up in the State of New York. Whereas a warrant has been issued for your arrest for violation of an order of protection (aggravated harassment by electronic means). It's just another day at the office for me Juan. This whole thing lies in your hands. YOUR future Juan



John Retweeted

**John** @ifoundyou33185 · Sep 23
@Toxic_Sjw you have no idea. We will see you soon.

John Retweeted

**John** @ifoundyou33185 · Sep 23
@Toxic_Sjw @theintercept just like your father
#coward#failure#sociopath#narcissistic

John Retweeted

**John** @ifoundyou33185 · Sep 23
@Toxic_Sjw your a little man hiding behind your keyboard coward.how
can you spew hate on your own momma?

John Retweeted

**John** @ifoundyou33185 · Sep 23
@Toxic_Sjw First to Missouri.. Then Brooklyn!Coward

John Retweeted

**John** @ifoundyou33185 · Sep 23
@Toxic_Sjw @theintercept @BuzzFeed @RiverfrontTimes @Gawker
@TMZ Toxics real identity is Juan M Thompson. Spewing hate. Follow
the trail



**John** @ifoundyou33185 · 9m

Just another day at the office !!



Juan... I belonged to the biggest gang in town.. were doorkickers.. the largest standing army in the eastern seaboard. No one is threatening you. I'm politely asking you to leave her alone . But you don't get it . So I will show you the light . I thought you loosing your job would turn the lightbulb on in your head. Again I ask you. Leave her alone .

3m