UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

UNITED STATES OF AMERICA,

              17 cr 165 (PKC)

   -against-         ORDER SETTING FORTH
                 STATEMENT OF REASONS FOR
                 SENTENCE

JUAN THOMPSON,

       Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

   At sentencing on December 20, 2017, the Court confirmed that:

   1. The materials the Court had in hand were the only materials the parties thought it should have on the subject of sentencing.

   2. The defendant had read, reviewed and discussed the Presentence Report ("PSR"), Addendum and Recommendations.

   3. Neither side had any objections to the facts set forth in the PSR, whereupon the Court adopted the facts set forth in the PSR as the Court's Findings of Fact.

   With regard to the Guidelines, the defendant's only objection was to the enhancements for violation of an Order of Protection, which had been recommended by Probation. PSR ¶¶ 37, 44. USSG § § 2A6.1(b)(3) and 2A6.2(b)(1). The plea agreement left open the defendant's right to challenge the enhancements. PSR ¶ 5((b). The Court conducted a Fatico hearing. The government called no witnesses but relied upon documentary evidence: Exhibit B to its sentencing submission which contained the text of the Orders of Protection; Exhibit C which includes an NYPD report of a telephonic interview of the defendant on November 21, 2016 in which the detective asked him "if he had been in contact with [Victim-1]

and he stated not since leaving NY. He states they filed reports against each other for harassment but states that he does not engage in communication with her;" and Exhibit E which contains an email allegedly sent by defendant to the defendant. Whether Exhibit E was sent by the defendant is disputed but not his receipt of Exhibit E. The email dated September 29, 2016 states in part "If you comply.[sic] It will end here. Except if you show up in the State of New York. Whereas a warrant has been issued for your arrest for violation of an order of protection (aggravated harassment by electronic means)." The defendant called no witnesses and offered no documents. Defense counsel argued that the evidence did not prove defendant's knowledge of any Order of Protection and noted that there was no evidence that any warrant had ever been issued as stated in the September 29 email.

   The Court found by the preponderance of the evidence that the defendant knew of the Order of Protection as evidenced by the express reference to the existence of "an order of protection" in the email he received on September 29, 2016. Alternatively, if he did not have actual knowledge of the specific contents of the Order of Protection, then he consciously avoided learning those facts. A person aware that his conduct was restrained by a judicial decree would have a strong motive to learn the content of that decree unless he was consciously avoiding obtaining that knowledge. This conscious avoidance was tantamount to actual knowledge. Further, the Court found that the facts at ¶¶ 13-26 (which the Court has adopted as its Findings of Fact) violated at least one Order of Protection (see, e.g. Order of August 6, 2016 renewed in October and December; PSR ¶ 12.) The Court found the Guidelines were correctly calculated in the PSR (TOL 21, CHC I).

Defense counsel spoke on defendant's behalf and the defendant spoke on his own behalf. In its written submission, defendant urged the Court to impose a sentence of principally 30 months imprisonment. Victim-1 spoke eloquently about the serious harm she suffered as a result of the defendant's campaign against her. The government also spoke and urged a Guidelines sentence.

The Court then announced a proposed sentence (60 months imprisonment, 3 years supervised release, restitution to be imposed within 90 days, waiver of the fine and imposition of the $200 special assessment) and a statement of reasons for the sentence. Thereafter defendant's counsel was given the opportunity to speak setting forth any objection to the proposed sentence or the statement of reason to for the sentence. Defendant, by his counsel, had no objection other than the comments made before the proposed sentence was announced. The government had no objection. Sentencing was then imposed and the defendant informed of his right to appeal.

In sentencing defendant, the Court considered all of the written submissions and arguments of the parties, as well as their oral statements, the written victim impact statements and the oral statement of Victim-1. It considered all of the factors under section 3553(a), noting that it need not recount all that it considered.

The Court's reasons for the above Guideline sentence are as stated on the record and include the following: Defendant embarked on a campaign of psychological torture against Victim-1. It was not a one-time error of judgment but a sustained campaign over months that did not stop until he was arrested. Defendant was an intelligent, well-educated individual (Bachelor's Degree from Vassar) who knew and appreciated the nature and consequences of his acts and why they were wrong. He harassed Victim-1, her employer and her co-workers. He

3

spread false information that she had been pulled over for driving while intoxicated, was being sued for transmitting a sexually transmitted disease, had threatened to kill him, had confessed to regularly viewing child-pornography (this was reported by defendant to the National Center for Missing and Exploited Children), and had made anti-Semitic comments. Defendant made false accusations about Victim-1 to the NYPD, ATF and New York State Office of Professions.

Defendant escalated his actions by sending bomb threats and other threats to, among others, Jewish community centers, schools or institutions across the country, including the offices of the Anti-Defamation League in Manhattan, two schools in Manhattan, The Center for Jewish History in Manhattan, a community center in San Diego and a school in Farmington Hills, MI. (PSR ¶31). The defendant's purpose, in the main, was either to implicate Victim-1 as the source of the threats or to accuse Victim-1 of falsely accusing him of the threats. These threats caused terror and fear on the part of the recipients. They also diverted the attention of law enforcement and the organizations who had no choice but to treat the threats as real.

The Court considered defendant's difficult upbringing, including his mother's crack addiction and his father's absence and troubles with law enforcement. He is 32 and has no prior convictions. The Court also considered his alcoholism which was a contributing factor to his crimes. A forensic psychologist retained by the defendant's counsel observed symptoms of anxiety, depression and personality disorder but "[b]ased on the information provided for this evaluation, Mr. Thompson does not meet the criteria for a severe mental illness." He rated the risk for future violence as "moderate," "with a low risk for severe violence and a low risk of imminent violence." Defendant's conduct while incarcerated has been good. He provided assistance to the government on an unrelated matter (See sealed portion of the transcript of December 20, 2017.)

There is a need for just punishment in this case because the harm to Vicitm-1 was direct and severe. The harm to the organizations receiving bomb or other threats was also direct and serious. There is a need to protect the public from further crimes of this defendant. With a "moderate" risk of future violence, he is in danger of reoffending. There is an important need to deter others from similar conduct. Cyberstalking of this extreme form can destroy a person's ability to function, to work and to live a normal life. Bomb threats are a harm to society, to law enforcement and to the organizations receiving the threats. They disrupt the public order. They are often difficult to detect and when uncovered they are in need of being deterred.

The Court has considered the Sentencing Guidelines, Policy Statements, and Official Commentary of the United States Sentencing Commission. It recognizes that the Guidelines are an important consideration in sentencing but they are advisory and that the Court has variance discretion. The Guidelines protect against unwarranted sentencing disparities. While the Court has often varied downward from the Guidelines, upward variances are rare.

An upward variance from the Guidelines is appropriate in this case for all of the reasons stated above, including that the conduct is far-more sustained, repeated, deliberate and damaging than what one would expect to find in the usual case.

The sentence of 60 months imprisonment, 3 years supervised release, waiver of the fine, restitution (to be imposed within 90 days) and the $200 special assessment is, in this Court's view, sufficient but not greater than necessary to achieve the purposes of section 3553(a).

SO ORDERED.

*P. Kevin Castel*
United States District Judge

Dated: New York, New York
December 21, 2017

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12-21-17

6