**18-74**
*United States v. Thompson*

N.Y.S.D. Case #
17-cr-0165(PKC)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term 2018

(Argued: January 29, 2019     Decided: April 10, 2019)

Docket No. 18-74

UNITED STATES OF AMERICA,

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Apr 10 2019

*Appellee*,

–v.–

JUAN THOMPSON,

*Defendant-Appellant*.

_____

Before:

CABRANES, WESLEY, *Circuit Judges*.[*]

---

[*] Judge Debra Ann Livingston, originally assigned to the panel, recused herself from consideration of this matter. The two remaining members of the panel, who are in agreement, have decided this case in accordance with Second Circuit Internal Operating Procedure E(b). *See* 28 U.S.C. § 46(d).

CERTIFIED COPY ISSUED ON 04/10/2019

Defendant-Appellant Juan Thompson appeals from a judgment of the United States District Court for the Southern District of New York (Castel, *J.*) sentencing him to 60 months' imprisonment for cyberstalking, 18 U.S.C. § 2261A(2), and making hoax threats, 18 U.S.C. § 1038(a)(1). Thompson argues that the district court erred in applying a two-level sentencing enhancement pursuant to United States Sentencing Guidelines § 2A6.2(b)(1)(A). We agree. Accordingly, we REMAND to the district court for further proceedings consistent with this opinion.

_____

JACOB E. WARREN, Assistant United States Attorney (Won S. Shin, Assistant United States Attorney, *on the brief*), *for* Geoffrey S. Berman, United States Attorney for the Southern District of New York, New York, NY, *for Appellee*.

EDWARD S. ZAS, Federal Defenders of New York, Inc., Appeals Bureau, New York, NY, *for Defendant-Appellant*.

_____

WESLEY, *Circuit Judge*:

Defendant-Appellant Juan Thompson appeals from a judgment of the United States District Court for the Southern District of New York (P. Kevin Castel, *Judge*) sentencing him to 60 months' imprisonment for cyberstalking, 18 U.S.C. § 2261A(2), and making hoax threats, 18 U.S.C. § 1038(a)(1). Thompson argues that the district court erroneously applied a two-level sentencing enhancement for offenses that "involve[] . . . the violation of a court protection order." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2A6.2(b)(1)(A). Thompson contends that this enhancement does not apply because he was not served with a protection

2

order in accordance with the law of the issuing state. We agree. Accordingly, we REMAND for further proceedings consistent with this opinion.

## BACKGROUND

On June 13, 2017, Thompson pleaded guilty to cyberstalking, in violation of 18 U.S.C. § 2261A(2), and conveying false information and making hoax threats, in violation of 18 U.S.C. § 1038(a)(1). Thompson had, among other things, sent harassing text messages to his ex-girlfriend, emailed her employer in an effort to have her fired, and emailed bomb threats and anti-Semitic messages in her name to various institutions.

At sentencing, the parties disagreed over whether the calculation of Thompson's sentence range was subject to United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") § 2A6.2(b)(1)(A), which imposes a two-level enhancement where the "offense involved . . . the violation of a court protection order." The disagreement stemmed from an August 2016 temporary order of protection that a Brooklyn family court issued *ex parte* in response to a petition filed by Thompson's ex-girlfriend.[1] The issuing judge attached to the order a

---

[1] The order required that Thompson:

3

summons directing Thompson to appear in family court "to answer the petition and to be dealt with in accordance with the Family Court Act." Thompson App. 63. The family court renewed the order and issued a new summons in October 2016. Although it is undisputed that Thompson's subsequent behavior would have violated the protection order, it is also undisputed that Thompson was never "formally served" with the petition, orders, or corresponding summonses. *Id.* at 45 n.3.

The district court applied the two-point enhancement because it found that, under New York law, Thompson was "on notice of the issuance" and contents of the order. *Id.* at 151. Application of the protection-order enhancement resulted in an advisory Guidelines range of 37 to 46 months' imprisonment.[2] The district court, however, found that Thompson's behavior warranted an upward departure

---

>[s]tay away from . . . [his ex-girlfriend]; . . . the home of [his ex-girlfriend]; . . . the place of employment of [his ex-girlfriend]; [r]efrain from communication or any other contact by mail, telephone, e-mail, voice-mail or other electronic or any other means with [his ex-girlfriend]; . . . [and r]efrain from . . . stalking, harassment, . . . intimidation, threats, . . . or any criminal offense against [his ex-girlfriend].

Thompson App. 61.

[2] Thompson argues that his Guidelines range would be 30 to 37 months' imprisonment without the enhancement.

4

and sentenced him to the statutory maximum of 60 months' imprisonment, *see* 18 U.S.C. §§ 1038(a)(1)(A), 2261(b)(5), to be followed by three years' supervised release. Thompson timely appealed.[3]

## DISCUSSION

In appeals challenging the application of a Guidelines provision, this Court has adopted an "either/or approach," reviewing challenges that involve "*primarily . . .* issue[s] of fact" for clear error and those that involve "*primarily . . .* issue[s] of law" *de novo*. *United States v. Vasquez*, 389 F.3d 65, 75–76 (2d Cir. 2004). Because the question of whether the district court correctly interpreted Guidelines § 2A6.2(b)(1)(A) "requires us to consider legal concepts in the mix of fact and law and to exercise judgment about the values that animate legal principles," our review is *de novo*. *Id.* at 75 (citation omitted).

We review the district court's sentencing decision for both procedural and substantive reasonableness. *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (*en banc*). As relevant here, "[a] district court commits procedural error where it . . . makes a mistake in its Guidelines calculation." *Id.* at 190. "When a defendant

---

[3] Under the written plea agreement, Thompson reserved his right to appeal if the district court sentenced him to an above-Guidelines term of imprisonment.

is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Molina–Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016).

## I. Guidelines § 2A6.2(b)(1)(A)

Guidelines § 2A6.2(b)(1)(A) imposes a two-level sentencing enhancement where "the offense involved . . . the violation of a court protection order." In November 2018, approximately one year after Thompson's sentencing hearing, the United States Sentencing Commission enacted Amendment 805, which modified this provision to "respond[] to concerns that the term 'court protection order' has not been defined in the [G]uidelines and should be clarified." U.S.S.G. Supp. App. C, amend. 805, at 168 (2018). Because Amendment 805 is "merely a clarification of the Sentencing Commission's prior intent . . . , rather than a change in substance," we afford Thompson the benefit of this revision on appeal. *See United States v. Kim*, 193 F.3d 567, 578 (2d Cir. 1999); *see also id.* (explaining that when "the Commission states its intent in making the change . . . , the Commission's characterization of the alteration as a clarification, rather than a change in substance, is accorded considerable deference"); U.S.S.G. § 1B1.11(b)(2) ("[I]f a court applies an earlier edition of the Guidelines Manual, the court shall consider subsequent

6

amendments, to the extent that such amendments are clarifying rather than substantive changes.").[4]

Application Note 1 to Guidelines § 1B1.1 provides "definitions of terms that are used frequently in the [G]uidelines and are of general applicability." After Amendment 805, the Application Note states that the term "'[c]ourt protection order' means 'protection order' as defined by 18 U.S.C. § 2266(5)[[5]] and consistent with 18 U.S.C. § 2265(b)." U.S.S.G. § 1B1.1 cmt. n.1(D). In turn, 18 U.S.C. § 2265(b) provides that:

---

[4] We note that the Government did not contest, either in its response to Thompson's Federal Rules of Appellate Procedure 28(j) letter or at oral argument, Thompson's position that Amendment 805 is "clarifying" rather than "substantive." Accordingly, it waived any such argument. *Cf. Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").

[5] 18 U.S.C. § 2266(5)(A) provides:

> The term "protection order" includes . . . any injunction, restraining order, or any other order issued by a civil or criminal court for the purpose of preventing violent or threatening acts or harassment against, sexual violence, or contact or communication with or physical proximity to, another person, including any temporary or final order issued by a civil or criminal court whether obtained by filing an independent action or as a pendente lite order in another proceeding so long as any civil or criminal order was issued in response to a complaint, petition, or motion filed by or on behalf of a person seeking protection . . . .

Thompson does not dispute that the New York temporary order of protection qualifies as a "protection order" under § 2266(5)(A).

7

> A protection order issued by a State . . . is consistent with this subsection if (1) such court has jurisdiction over the parties and matter under the law of such State . . . ; and (2) reasonable notice and opportunity to be heard is given to the person against whom the order is sought sufficient to protect that person's right to due process. In the case of *ex parte* orders, notice and opportunity to be heard must be provided within the time required by State . . . law, and in any event within a reasonable time after the order is issued, sufficient to protect the respondent's due process rights.

*Id.*

Amendment 805 thus clarifies that the § 2A6.2(b)(1)(A) enhancement applies only to a state court's *ex parte* protection order if that order was issued: (1) by a court with personal jurisdiction over both the petitioner and the respondent, as determined by the law of the issuing state;[6] (2) by a court with jurisdiction over the subject matter, as determined by the law of the issuing state; (3) in compliance with federal procedural due process protections; and (4) in compliance with state time limits regarding notice and the opportunity to be heard. A court looks to the law of the issuing state with respect to the first, second, and fourth requirements, but federal due process principles with respect to the third. *See United States v. Townsend*, 897 F.3d 66, 71 (2d Cir. 2018) (applying, in interpreting the Guidelines,

---

[6] Of course, Amendment 805 does not foreclose a party's argument that the state court's exercise of personal jurisdiction was inconsistent with the United States Constitution's due process protections. *See, e.g., BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017).

8

the presumption that "the application of a federal law does not depend on state law *unless Congress plainly indicates otherwise*" (emphasis added)).

In light of the new requirements Amendment 805 imposes, the district court erred by asking only whether, under New York law, Thompson was "on notice of the issuance" and contents of the order. Thompson App. 151.[7] The § 2A6.2(b)(1)(A) enhancement comes into play only if, among other requirements, the Brooklyn family court had personal jurisdiction over Thompson. As discussed below, it did not, and with that determination we need not—and do not—offer any opinion as to whether the district court's inquiry, or the government's proof, satisfied the remaining three due process protections outlined above.

## II. Thompson Did Not Receive Service in Accordance with New York Law

Protection orders issued under Article 8 of the New York Family Court Act ("the Act") arise from civil proceedings. N.Y. Fam. Ct. Act § 812(2)(b).[8] Under New

---

[7] We are necessarily mindful that this error is not of the district court's making. The district court could not have known, at the time it sentenced Thompson, that the Sentencing Commission would later introduce a definition of "court protection order" that would require consideration of additional factors.

[8] Although protection orders can be issued under various provisions of the New York Code, the order against Thompson states that it was issued "under Article 8 of the Family Court Act." Thompson App. 61.

9

York law, a court does not have personal jurisdiction over civil defendants unless they are served in accordance with statutory requirements. *Feinstein v. Bergner*, 48 N.Y.2d 234, 241 (1979). "[A]ctual notice of the suit does not cure . . . defect[ive service] . . . ." *Id.*; *see also Raschel v. Rish*, 69 N.Y.2d 694, 697 (1986) (same).

Therefore, although the Act empowers family courts to issue temporary protection orders immediately upon the filing of a petition, *see* N.Y. Fam. Ct. Act § 821-a(2)(b), merely issuing an order does not give a court personal jurisdiction over the affected individual. Rather, where a court issues an *ex parte* order against a person over whom it does not already have jurisdiction, the court cannot enjoin the individual's behavior unless and until the person has been properly served. Proper service requires that the affected individual be "promptly" served with a copy of the "temporary order of protection . . . together with any associated papers," including the summons and petition, "at any address designated" in the order. *Id.* § 153-b(c); *see also id.* § 153-b(e) (providing for alternative service via facsimile or electronic means). Once service is made, the issuing court must be provided "with an affirmation, certificate[,] or affidavit of service" detailing the date, time, and location of service. *Id.* § 153-b(d); *see also id.* § 153-b(e) (providing that where service is attempted but not made, the issuing court must be given "[a]n

10

affirmation, certificate[,] or affidavit of service . . . stating the name of the party and the papers attempted to be served on said person, and for each attempted service, the date, time, [and] address").

The Government conceded in its submission to the district court that Thompson was never formally served with the petition, orders, or summonses. Nor is there a claim that another order of protection was issued as a result of the commencement of a criminal proceeding. *See* N.Y. Crim. Proc. § 530.12(1) ("When a criminal action is pending involving a complaint charging any [family offense], the court . . . may issue a temporary order of protection . . . ."). Accordingly, based on the record before the district court at sentencing, the protection order was not "issued by . . . [a] court [with] jurisdiction over the parties," 18 U.S.C. § 2265(b)(1), and therefore cannot serve as the basis for a Guidelines § 2A6.2(b)(1)(A) enhancement.

The Government's argument that actual notice may substitute for proper service confuses the requirements for personal jurisdiction with those for contempt of a protection order. Under New York law, personal jurisdiction requires service as statutorily prescribed. *Feinstein*, 48 N.Y.2d at 241. Contempt proceedings may move forward upon a showing of actual notice, but only so long

11

as the court making the contempt finding already has personal jurisdiction over the defendant. *See, e.g.*, *People v. McCowan*, 85 N.Y.2d 985, 987 (1995) (overturning a criminal conviction for violation of a protection order because, although "notice is adequate to support a criminal prosecution stemming from violation of an order *if given orally in court*," the defendant was never informed, "either orally or in writing, [of] the contents of the order and the conduct it prohibit[ed]" (emphasis added)); *In re McCormick v. Axelrod*, 59 N.Y.2d 574, 578, 583 (1983) (per curiam) (holding respondents to a stay order in civil contempt where they had not been served with the order, but had previously been "served with all papers [including the stay petition] in [the ongoing] proceeding," because "the party *to be held in contempt* must have had knowledge of the court's order, although it is not necessary that the order actually have been served upon the party" (emphasis added)).

In sum, the Government has failed to prove that, under New York law, Thompson was properly served with the disputed *ex parte* protection order, and, thus, that the issuing court ever exercised personal jurisdiction over Thompson— *i.e.*, that the court ever had the power to enjoin his behavior. The order was

12

therefore inconsistent with 18 U.S.C. § 2265(b)(1) and cannot serve as the basis for an enhancement under Guidelines § 2A6.2(b)(1)(A).

### III. Sentencing Remand

By applying the § 2A6.2(b)(1)(A) enhancement, the district court sentenced Thompson "under an incorrect Guidelines range." *Molina–Martinez*, 136 S. Ct. at 1345. We are mindful that, because the Guidelines are advisory, "[w]here we identify procedural error in a sentence, but the record indicates clearly that 'the district court would have imposed the same sentence' in any event, the error may be deemed harmless, avoiding the need to vacate the sentence and to remand the case for resentencing." *United States v. Jass*, 569 F.3d 47, 68 (2d Cir. 2009) (quoting *Cavera*, 550 F.3d at 197).

However, this is not such a case. In *Jass*, the district court "unequivocally" stated that it would have imposed the same sentence regardless of how the issue of a disputed enhancement "ultimately work[ed] out" on appeal. *Id.* The district court here made no such finding. Although it did impose the statutory maximum term of imprisonment, we cannot say, given the relatively small difference between its incorrect Guidelines calculation and that maximum term, that it "clearly" would have given the same sentence if operating with the benefit of the correct range.

13

The error in applying the enhancement was therefore not harmless, and we remand the case to the district court for resentencing. Upon reconsideration, the district court may, in its discretion, impose a sentence it deems appropriate under the law.

## CONCLUSION

We hold that in the circumstances present here, the district court erred in applying a two-level sentencing enhancement under Guidelines § 2A6.2(b)(1)(A). Accordingly, we REMAND the cause to the district court for further proceedings consistent with this opinion.

14

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

Catherine O'Hagan Wolfe