UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

                                                                                               17-cr-165 (PKC)

        -against-

                                                                                              <u>ORDER</u>

JUAN THOMPSON,

                        Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.:

        Defendant Juan Thompson has filed a motion for a sentence reduction pursuant to the First Step Act of 2018, 18 U.S.C. § 3582(c)(1)(A), asserting "extraordinary and compelling reasons." (Doc 64.) The government asserts that Thompson has not demonstrated that he has satisfied the statutory exhaustion requirement. (Doc 66 at 1.) The Court assumes without deciding that he has exhausted his administrative remedy but nevertheless denies the application.

DISCUSSION

        Section 3582(c)(1)(A) of title 18 provides that "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier," a court may reduce such defendant's sentence if it finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the "factors set forth in section 3553(a) to the extent that they are

applicable." Id. § 3582(c)(1)(A).

The United States Sentencing Commission is required by statute to promulgate "general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18 [] describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). See United States v. Butler, No. 19 Cr. 834-10 (PAE), 2020 WL 1689778, at *1 (S.D.N.Y. Apr. 7, 2020); United States v. Ebbers, 432 F. Supp. 3d 421, 427-29 (S.D.N.Y. 2020). The Commission's policy statement and its corresponding commentary on section 3582(c)(1)(A) state that a court may reduce a sentence for "extraordinary and compelling reasons," including where the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(1)(A) & cmt. 1(A)(ii). The defendant must also not be a danger to the community and the reduction must be consistent with the Commission's policy statement. Id. § 1B1.13(2)–(3).

The defendant entered a plea of guilty to the crimes of cyberstalking and conveying false information and hoaxes. (Doc 22 at 19.) He was sentenced principally to an above guidelines term of 60 months imprisonment. (Doc 34.) The case was remanded to this Court because of an intervening change in the sentencing guidelines before his appeal was decided. (Doc 43.) For reasons explained at the time of resentencing, this Court again sentenced the defendant to principally 60 months imprisonment. (Doc 59.) His projected release date is November 14, 2021.

According to the Revised Final Presentence Report ("PSR"), Thompson is 34

years old and suffers from vertigo.  (Doc 57 ("PSR") at ¶ 75.)  He experienced symptoms of epilepsy and asthma earlier in his life.  (Id. at ¶ 76.)  According to the PSR "Thompson has not experienced any symptoms from either condition in the past several years." (Id. at ¶ 77.)[1]

The CDC reports that person with moderate to severe asthma "might be at an increased risk" of serious health consequences if they became infected by the Covid -19 virus.[2]  The Epilepsy Foundation does not view epilepsy in and of itself as increasing the risk of contracting or severity of the Covid-19 virus.[3]  Vertigo or dizziness may be a manifestation of Covid-19 but nothing before the Court suggests that pre-existing Vertigo increases the risk of contracting or the severity of the virus.[4]

Defendant argues that he is inherently at risk because he is in a Bureau of Prisons ("BOP") facility.  The parties dispute whether the BOP has adequately protected inmates against COVID-19 infection.  The BOP website reports that FCI Forrest City Low, where Thompson is incarcerated, has 4 inmate cases and 11 staff cases of Covid.[5]  For purposes of this motion, the Court assumes that there are risks from the virus to a person at liberty and also to a person incarcerated at FCI Forrest City Low, but that a person at liberty has the ability to make his own choices as to (a) minimizing risks by distancing himself, utilizing personal protective equipment of his choice, and restricting contact with others; and (b) accessing medical treatment in the event he experiences symptoms.

But there are a host of relevant section 3553(a) factors that make Thompson a poor candidate for sentence reduction.  Defendant's conduct and the danger he poses is highly

---

[1] At sentencing and resentencing, there were no objections to the facts set forth in the PSR.  (12/20/17 Tr. at 3; Doc 37; 12/16/19 Tr. at 5; Doc 61.)
[2] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed October 23, 2020.)
[3] https://www.epilepsy.com/learn/covid-19-and-epilepsy  (last accessed October 23, 2020.)
[4] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7492824. (last accessed October 23, 2020.)
[5] https://www.bop.gov/coronavirus/ (last accessed October 23, 2020.)

relevant to the present application.  Defendant embarked on a campaign of psychological torture against Victim-1.  It was not a one-time error of judgment but a sustained campaign over months that did not stop until he was arrested.  Defendant was an intelligent, well-educated individual (Bachelor's Degree from Vassar) who knew and appreciated the nature and consequences of his acts and why they were wrong.  He harassed Victim-1, her employer and her co-workers.  He spread false information that she had been pulled over for driving while intoxicated, was being sued for transmitting a sexually transmitted disease, had threatened to kill him, had confessed to regularly viewing child-pornography (this was reported by defendant to the National Center for Missing and Exploited Children), and had made anti-Semitic comments.  Defendant made false accusations about Victim-1 to the NYPD, the ATF and the New York State Office of Professions.

Defendant escalated his actions by sending bomb threats and other threats to, among others, Jewish community centers, schools or institutions across the country, including the offices of the Anti-Defamation League in Manhattan, two schools in Manhattan, the Center for Jewish History in Manhattan, a community center in San Diego and a school in Farmington Hills, MI.  (PSR at ¶ 31).  The defendant's purpose, in the main, was either to implicate Victim-1 as the source of the threats or to accuse Victim-1 of falsely accusing him of the threats.  These threats caused terror and fear on the part of the recipients.  They also diverted the attention of law enforcement and the organizations who had no choice but to treat the threats as real.

In sentencing the defendant, the Court considered defendant's difficult upbringing, including his mother's crack addiction and his father's absence and troubles with law enforcement.  He was 34 at the time of his original sentencing and had no prior convictions.  The Court also considered his alcoholism which was a contributing factor to his crimes.  A forensic

psychologist retained by the defendant's counsel observed symptoms of anxiety, depression and personality disorder but "[b]ased on the information provided for this evaluation, Mr. Thompson does not meet the criteria for a severe mental illness." (Doc 37 at 50.) He rated the risk for future violence as "moderate," "with a low risk for severe violence and a low risk of imminent violence." In mitigation, he provided assistance to the government on an unrelated matter. (See sealed portion of the transcripts of December 20, 2017 and December 16, 2019.)

CONCLUSION

Considering Thompson's age (34), medical condition (a history of asthma, epilepsy and vertigo), the conditions at FCI Forrest City Low, the nature and circumstances of the crime, his history and characteristics, the other section 3553(a) factors, and the danger to the community that he would pose if he were at liberty, the Court concludes that there are not "extraordinary and compelling" reasons to reduce Thompson's sentence. His motion is therefore DENIED. The Clerk is directed to terminate the motion. (Doc 64.).

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
October 27, 2020